Josh THUDIUM, Plaintiff–Appellee,

v.

ALLIED PRODUCTS CORPORATION,
Defendant–Appellant,

v.

FULTON PERFORMANCE PRODUCTS,
INC., Third–Party Defendant–
Appellant.

No. 94–1425.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1994.

Decided Oct. 4, 1994.

Paul Lee, St. Louis, MO, argued (Chris Osborn, St. Louis, MO, Timothy Sear, Kansas City, MO, on the brief), for appellant.

Rex Gump, Moberly, MO, argued (Gary Tatlow and Vicki Davis, on the brief), for appellee.

Before HANSEN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Allied Products Corporation ("Allied") and Fulton Performance Products, Inc., ("Fulton") appeal a judgment in favor of plaintiff/appellee Josh Thudium for injuries sustained when he was struck by a falling grain auger. Thudium submitted three theories of recovery to the jury: negligence, strict liability for defective design, and strict liability for failure to warn. On the basis of the first two claims, the jury awarded Thudium $140,000. The district court reduced this amount by $4,100, the amount that Thudium received in insurance payments. In addition, the jury found in favor of Allied, the manufacturer of the auger, and against Fulton, the manufacturer of the auger's winch, on the third-party claim filed by Allied. On appeal, Allied and Fulton argue that Thudium failed to establish a causal link between any failure on the part of the defendants/appellants and his injuries, and that the district court erred in allowing Thudium's expert witness to testify. We affirm.

## I.

At the time of the accident, Josh Thudium, a sixteen-year-old high-school student, had lived with his father for approximately one year. During that time he assisted with routine tasks on the family farm in New Boston, Missouri, including the use of a Model 480 grain auger manufactured by the Kewanee Farm Equipment Company Division of Allied.

The grain auger is approximately 60 feet long, and consists of a large, screw-shaped auger which rotates inside a metal tube, forcing grain through the tube. This apparatus is mounted on a metal frame. The auger can be raised or lowered by manual operation of a Fulton K2500 Model winch on the side of the metal frame. The handle of the winch is bolted to the pinion shaft, which drives a series of gears in order to rotate the cable drum. When the handle of the winch is turned clockwise, the cable wraps around the cable drum and raises the auger. When the handle is turned counterclockwise, the auger is lowered.

The winch includes two braking mechanisms: the brake plates and the pawl. Two brake plates are mounted on the pinion shaft, and the ratchet or pinion gear lies between them. When the handle of the winch is turned clockwise, the brake plates tighten against the gear. When the handle is released or turned counterclockwise, the weight of the auger holds the brake plates against the gear. The pawl is a mechanical stop which catches between the teeth of the ratchet or pinion gear as it turns, thus preventing the cable drum from turning unless the handle is turned. The handle is not considered part of the braking systems.

On July 10, 1989, Josh Thudium and his father, Tim Thudium, intended to load oats into a grain bin on the family farm using the grain auger. The auger had been purchased by Richard Thudium, Josh Thudium's grandfather, approximately ten years earlier and had been in regular use. Prior to loading the grain bin, Josh and Tim Thudium had to raise the metal tube housing the auger and position its discharge end above the bin. As described above, this task was normally accomplished by turning the handle of the attached winch. The handle had been fastened to the pinion shaft of the winch with a metal bolt; however, on the day of the accident the handle was missing. While Josh Thudium searched for the handle in the tall grass around the auger, his father obtained an adjustable wrench and fitted it on the winch in place of the missing handle. Tim Thudium then attempted to raise the auger by using the wrench to turn the pinion shaft clockwise. After completing one revolution, he removed the wrench in order to reposition it. As he did so, the tube and auger fell,

striking Josh Thudium on the back and pinning him beneath the metal frame. Josh Thudium was unconscious for a short time, and he suffered back injuries as well as a broken ankle.

## II.

The jury in this case was accurately informed of the Missouri standards governing claims of negligence, strict liability for defective design, and strict liability for failure to warn. To assess liability based on negligence, the jury was required to determine whether that Allied manufactured, designed, and sold the grain auger; whether the winch and auger were defective; whether Allied failed to use ordinary care in the manufacture and design of the grain auger or to adequately warn Thudium; and whether Allied's failure caused Thudium's injuries. *See Church v. Martin–Baker Aircraft Co., Ltd.,* 643 F.Supp. 499, 504 (E.D.Mo.1986); *Sperry v. Bauermeister, Inc.,* 804 F.Supp. 1134, 1138 (E.D.Mo.1992). To assess Thudium's claim of strict liability for defective design, the jury was required to determine whether Allied sold the grain auger in the course of business; whether at the time of sale the grain auger was in a defective condition unreasonably dangerous when put to a reasonably anticipated use; whether the grain auger was used in a reasonably anticipated manner; and whether the defective condition caused Thudium's injuries. *See id.; Drabik v. Stanley–Bostitch, Inc.,* 997 F.2d 496, 506 (8th Cir.1993) (discussing Missouri application of unreasonable danger standard). As the jury found in favor of Allied and Fulton on the claim of strict liability for failure to warn, the joint appellants do not raise that issue.

The required element of causation is common to claims of both negligence and strict liability for defective design, and it forms the primary basis of this appeal. Missouri law recognizes that "common experience tells us that some accidents do not ordinarily occur in the absence of a defect and in those situations the inference that a product is defective is permissible." *Winter v. Sears, Roebuck and Co.,* 554 S.W.2d 565, 570 (1977). Despite this recognition of circumstantial evidence, the plaintiff must prove

his claim without resort to conjecture or speculation and must demonstrate circumstances which point reasonably to the desired conclusion and exclude any other reasonable conclusion. *Aetna Casualty and Surety Co. v. General Electric Co.,* 758 F.2d 319, 322 (8th Cir.1985). In order to fulfill this burden, Thudium relied upon the expert testimony of Dr. Donald Creighton, who opined that:

   (a) the grain auger was in its as-manufactured condition;

   (b) the grain auger lacked a durable and reliable means of control;

   (c) the winch utilized an engaging/disengaging mechanism which created opportunities for the auger to fall;

   (d) there was no durable warning on the winch handle;

   (e) there were no warnings regarding operation of the auger without a winch handle or regarding walking beneath the auger; and

   (f) the design of the winch and auger violated the applicable American Society of Agricultural Engineering (ASAE) standard.

In his testimony Dr. Creighton did not indicate that any particular defect had caused the accident; however, he stated that in the absence of these defects, the auger would not have collapsed. Dr. Creighton further considered and rejected possible causes unrelated to the design of the auger and its winch, including failure of the cable or pulleys. Under Missouri law, this evidence was clearly adequate for submission to a jury on the issue of causation.

## III.

An additional basis for appeal is the argument that the district court violated its own order by allowing Dr. Creighton to testify regarding the cause of the accident. The appellants' initial motion *in limine* called for exclusion of all or part Dr. Creighton's testimony on the basis of Fed.R.Civ.P. 26(b)(4) and U.S.D.C. (E.D.Mo.) Rule 33 because he had altered his testimony regarding the role of the pawl in the accident shortly prior to trial. The district court agreed to exclude this specific opinion as to the cause of the

accident, and it was not offered at trial. The appellants now claim that the *in limine* motion also barred Dr. Creighton's testimony that in the absence of the defects which he described, the auger would not have collapsed, because he had previously offered no opinion as to the specific cause of the accident. We believe that Dr. Creighton's characterization of the auger's defects as essentially a "but/for" cause of the accident did not infringe upon the appellants' right under Fed.R.Civ.P. 26(b)(4) and U.S.D.C. (E.D.Mo.) Rule 33 to discover the content of his intended testimony. The opinion testimony was rather a logical inference drawn from the previous recital of the grain auger's defects. Both appellants were aware, moreover, that Dr. Creighton intended to identify these defects at trial, and each appellant offered expert testimony defending the design integrity of the grain auger and suggesting other possible causes of the accident. Therefore, Dr. Creighton's opinion testimony did not constitute unfair surprise and was not prejudicial to the appellants. *See Phil Crowley Steel Corp. v. Macomber, Inc.,* 601 F.2d 342, 344 (8th Cir.1979) (noting that trial judge had wide discretion to allow expert testimony, even though the testimony was revised shortly prior to trial); *Dunafon v. Delaware McDonald's Corp.,* 691 F.Supp. 1232, 1235 (W.D.Mo.1988) (denying motion to strike expert testimony which was updated between deposition and trial, where no prejudice to moving party would result). The district court did not abuse its discretion in allowing Dr. Creighton to offer a general opinion as to the cause of the accident.

## IV.

For the foregoing reasons, we uphold the jury's award and the order of the district court.