**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**David E. LIPSON, Defendant.**

**No. 97 C 2661.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 16, 1998.

Order Denying Reconsideration
March 5, 1999.

Gregory Paul Von Schaumburg, Securities & Exchange Commission, Chicago, IL, Yuri B. Zelinsky, Robin W Sardegna, Securities & Exchange Commission, Washington, DC, James A Kidney, Christopher F Robertson, Yuri B. Zelinsky, Securities and Exchange Commission, Washington, DC for Securities and Exchange Commission, plaintiff.

Dean A. Dickie, Vanessa L. Vargas, D'Ancona & Pflaum, Chicago, IL, Lowell E. Sachnoff, Sachnoff & Weaver, Ltd., Chicago, IL, Kathleen Helen Klaus, D'Ancona & Pflaum, Chicago, IL, for David E Lipson, defendant.

## MEMORANDUM OPINION AND ORDER

SCHENKIER, United States Magistrate Judge.

This case comes before the Court on the motion by Plaintiff Securities and Exchange Commission ("SEC") to bar Defendant's expert, Ben W. Perks, from testifying at trial and to strike Mr. Perks' Rule 26 report.[1] The parties have extensively briefed this motion, and at a status conference on November 19, 1998, this Court asked the parties a number of questions about various issues raised in the briefs. For the reasons set forth below, the Court finds that Mr. Perks' report and proffered testimony fail to meet the requirements of

Fed.R.Evid. 702, and thus grants the SEC's motion.

### I.

In 1995, Defendant David E. Lipson served as Chief Executive Officer of Supercuts, Inc. The SEC alleges that in March and April 1995, Defendant traded some 365,000 shares of Supercuts stock on the basis of internal company reports revealing poor sales performance. The SEC alleges that this internal financial information was not publicly available at the time, and thus allowed Defendant to sell these shares before the price of Supercuts shares dropped in 1995, when the public learned of the company's poor sales performance.

The SEC alleges that Defendant's use of this non-public information violated Section 17(a) of the Securities Act (15 U.S.C. § 77q(a)); Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), and Rule 10b–5 thereunder; and Section 16(a) of the Exchange Act (15 U.S.C. § 78p(a)), and Rules 16a–2 and 16a–3 thereunder. As one of his defenses, Defendant states that he did not rely on or even consider this internal financial information, because he believed that Supercuts' accounting department was "in shambles" and was unable to produce reliable financial reports (4/29/98 Deft. Resp. to Motion to Bar ("Dft.Resp."), at 2).

In support of this defense, Defendant seeks to offer testimony from a retained expert, Ben W. Perks. Mr. Perks, a certified public accountant licensed in Illinois, California and Arizona, is a partner in the Chicago Office of Price Waterhouse. Mr. Perks also possesses a law degree, and is admitted to the Ohio bar.

Defendant has produced a written expert report from Mr. Perks (Dft.Resp., Ex. A). Although Mr. Perks' expert report is lengthy, spanning 36 pages (including appendices), his two basic opinions may be

---

1. By an order dated April 15, 1998, this motion was referred to the Magistrate Judge for decision by the Honorable James F. Holderman, the District Judge presiding in the case.

summarized more succinctly: (1) that Mr. Lipson and others in management at Supercuts in March and April 1995 considered the internal financial reports unreliable, and (2) that those internal financial reports in fact were unreliable (Deft. Resp., Ex. A: Perks Report 1–2).

In reaching those opinions, Mr. Perks did not prepare an audit of the internal financial reports (Deft. Resp., Ex. B: Perks Dep. 188). Mr. Perks was not asked to perform, and did not perform, any analysis of whether the internal financial reports were reliable in reporting corporate revenues or how those revenues compared to budget (*id.* at 32). Nor did Mr. Perks compare the accuracy of the internal reports to the reports that were filed publicly in May 1995 (*id.* at 34–35).

Mr. Perks testified that he did not attempt to determine the accuracy of the internal financial reports, because "the mere fact that they were or were not accurate does not consider the environment in which they were prepared over the last couple years where you had in the previous year, 1993, a material weakness in internal accounting control because of numerous errors" (Deft. Resp., Ex. B: Perks Dep. 101). The "material weakness" to which Mr. Perks referred was set forth in an Arthur Andersen report in April 1994, which addressed the 1993 audit period and which Mr. Perks discussed in his report. Mr. Perks acknowledged in his deposition that Arthur Andersen did not issue a material weakness letter for the 1994 or 1995 audit reports (*id.* at 92–95).

In his deposition, Mr. Perks reiterated the opinion in his Rule 26 report that Mr. Lipson "didn't think the [internal financial] reports were very reliable" (Deft. Resp., Ex. B: Perks Dep. 69), and thus "didn't pay much attention to them, didn't read them since the middle of 1994" (*id.* at 68). Mr. Perks said that not only Mr. Lipson but also certain others in management considered the information in the internal financial reports to be "useless. They felt the information was unreliable" (*id.* at

103). Mr. Perks acknowledged that there was deposition testimony from another individual in Supercuts management, Mr. Conlisk, indicating that the internal reports were reliable, and in his deposition Mr. Perks stated why that did not alter his opinion (*id.* at 44):

> I am also aware of testimony by Mr. Conlisk which seems to contradict other statements made by him. And, again, I took that information into consideration not only his testimony, but the testimony of other operating executives in terms of the background and the use of the information that was prepared.

Mr. Perks' Rule 26 report identified numerous sources of information that he relied upon in reaching his opinions, including various pleadings, deposition transcripts and exhibits in this lawsuit; various financial reports, documents and information of Supercuts; documents prepared by Arthur Andersen in performing services for Supercuts between 1993 and 1995; transcripts of testimony and exhibits from a separate lawsuit between Mr. Lipson and Supercuts and from an SEC action; and telephone discussions with former Supercuts' employees (Deft. Resp., Ex. A: Perks Report 25–27). During the status conference on November 19, 1998, counsel for Defendant acknowledged that the information relied upon by Mr. Perks, if relevant, all could be (or could have been) reduced to a form admissible at trial.

In addition, counsel for Defendant acknowledged that at trial, Mr. Lipson will testify to fundamentally the same points that are the subject of Mr. Perks' opinion (that is, that the internal financial reports were not reliable and that he did not consider them reliable). Mr. Lipson also will cite in substance the same considerations identified by Mr. Perks in his report. Counsel for Defendant candidly acknowledged that Defendant wishes to call Mr. Perks because the jury might view Defendant's testimony with skepticism due to his obvious interest in the outcome of the case.

In other words, Defendant would like to have the credibility of Mr. Lipson's testimony enhanced by Mr. Perks' "independent" expert testimony.

## II.

■ Federal Rule of Evidence 702 provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court established a framework for determining whether proffered expert testimony meets the standard established by Rule 702. As interpreted by the Seventh Circuit, *Daubert* requires a two-step analysis: *first*, the District Court must determine whether the expert testimony is reliable, and *second*, the Court must determine whether the expert testimony would assist the trier of fact in understanding the evidence or in determining a fact in issue. *Cummins v. Lyle Industries*, 93 F.3d 362, 367–68 (7th Cir.1996); *see also Roback v. VIP Transport, Inc.*, 1994 WL 548197 (N.D.Ill.1994) (Holderman, J.). The proponent of expert testimony bears the burden of establishing its admissibility. *Bradley v. Brown*, 852 F.Supp. 690, 697 (N.D.Ind.), *aff'd*, 42 F.3d 434 (7th Cir.1994).[2]

■ In considering the reliability prong of the *Daubert* analysis, the Court must consider whether the principles and methodology underlining the testimony are valid. As the Seventh Circuit has put it in the context of scientific evidence, the Court "must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Cummins*, 93 F.3d at 368 (*quoting Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 318 (7th Cir.1996)). Thus, the fact that Mr. Perks is a certified public accountant—and thus generally possesses the "specialized knowledge" to qualify as an expert witness under the proper circumstances—does not automatically render his opinions in this case reliable. *E.g., Frymire–Brinati*, 2 F.3d at 186–88 (testimony by certified public accountant held improperly admitted because his valuation testimony did not employ the methodology that experts in valuation find essential); *De Jager Construction, Inc. v. Schleininger*, 938 F.Supp. 446, 449–455 (W.D.Mich.1996) (excluding certified public accountant expert opinion testimony). If the opinion is not squarely grounded in the principles and methodology of the relevant discipline, the opinion is "inadmissible no matter how imposing [the] credentials of the proffered expert." *Rosen*, 78 F.3d at 318–19 (opinion testimony "expressing what may be an insightful, even an inspired, hunch" was properly excluded because it "lacks scientific rigor").

■ *Daubert* also makes it clear that even if proffered expert opinion meets the reliability standard, the expert testimony will not be admitted unless it will assist the trier of fact in understanding the evidence or determining a fact in issue. In order to satisfy the requirement of "helpfulness," the expert testimony must satisfy two elements. *First*, the proffered testimony must relate to a fact in issue: "[e]xpert testimony which does not relate to an issue in the case is not relevant, and, ergo, nonhelpful." *Porter v. Whitehall Laborato-*

---

2. Although *Daubert* specifically addressed Rule 702 in the context of scientific expert testimony, the Seventh Circuit has recognized that this basic analytical framework is not limited to the scientific context. *Cummins*, 93 F.3d at 367 n. 2; *see also Frymire–Brinati v. KPMG Peat Marwick*, 2 F.3d 183 (7th Cir. 1993) (applying *Daubert* in reversing jury verdict where expert accountant testimony was erroneously admitted). Here, the parties agree that this two-step analysis applies to the Court's consideration of Mr. Perks' proffered testimony.

*ries, Inc.,* 9 F.3d 607, 613 (7th Cir.1993) (citations omitted). *Second,* the proffered testimony must assist the jury in understanding what otherwise might be outside its grasp. Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand. In particular, expert testimony must not be allowed to cross over the line of helpfulness and to invade the quintessential jury function of determining the credibility of witnesses. *DeJager Construction,* 938 F.Supp. at 449 ("expert testimony is not needed to determine whether a declarant or witness is telling the truth").

■ With these principles in mind, the Court considers the two opinions that Mr. Perks intends to offer: (1) that Mr. Lipson and others at Supercuts did not believe the internal financial reports in March and April 1995 were reliable, and (2) that those reports, in fact, were not reliable. The Court finds that Defendant has failed to meet its burden of meeting the two-part test established by Rule 702 and *Daubert* for establishing the admissibility of Mr. Perks' opinions.[3]

### A.

■ Mr. Perks' opinions concerning what Mr. Lipson or others at Supercuts believed about the reliability of the internal financial reports falls far short of meeting the reliability and helpfulness criteria set forth in Rule 702. As to reliability, all of Mr. Perks' years of training and experience as an accountant (or, for that matter, his training as an attorney) do not specially equip him to divine what Defendant truly believed about the reliability of the

reports. Any opinions Mr. Perks might offer in that regard are not based on the methodology and principles of accountancy. Those opinions are, at worst, rank speculation; at best, they are credibility choices that are within the province of the jury, not Mr. Perks, to make.

As to helpfulness, any opinions by Mr. Perks concerning what Defendant believed about the reliability of the reports would not assist the jury. The jury needs no assistance in determining the credibility of Defendant's anticipated testimony that he did not believe the internal financial reports in March and April were reliable. *See DeJager,* 938 F.Supp. at 449. Rather than assist the jury, Mr. Perks' opinion testimony would invade, and perhaps usurp, the jury's fact-finding function. In reaching his conclusion that Defendant did not consider the reports reliable, Mr. Perks necessarily made credibility determinations based on what he was told and what he heard from Defendant and a multitude of other sources. This is precisely the credibility determination that the jury will be required to make. The admission of Mr. Perks' opinion testimony would not help the jury, but instead could unfairly influence the jury in making that determination.

### B.

■ Unlike his opinion concerning what Defendant believed, Mr. Perks' opinion that the internal reports in March and April 1995 were in fact unreliable is more conventionally within the type of expert opinion one could expect from accountants. However, on closer scrutiny, the Court finds that this opinion also fails to meet

**3.** At the threshold, the Court rejects Defendant's argument that the SEC's motion is premature simply because Mr. Perks' deposition has not been concluded (Deft.Resp.2–4). One of the purposes of the expanded disclosure requirement for expert reports, ushered in by the 1993 amendments to Rule 26, was to provide in substance the expert's direct testimony at trial. This was intended to allow the opposing party, if he or she so chose, to dispense with the expert's deposition. *See Advisory Committee Notes to 1993 Amendments to Rule 26(a)(2).* The current status of the record adequately reveals the reasons why Mr. Perks' opinions should be excluded. Defendant cites no authority for the prematurity argument, and the Court finds no basis to require the SEC to defer this motion and incur the expense of further deposing Mr. Perks.

the criteria for admissibility under Rule 702.

*First,* the Court finds that Mr. Perks' opinions that the internal financial reports in March and April 1995 were unreliable are not sufficiently rooted in the principles and methodology of accountancy. Mr. Perks' deposition testimony makes explicit what is implicit in his Rule 26 report: that he did not attempt to audit the Supercuts internal financial reports, that he did not attempt to determine their accuracy, and that he did not assess the reliability of those reports in reporting revenue or how revenues compare to budget. Moreover, although Mr. Perks cited as one basis for his opinion an Arthur Andersen report for the audit period covering 1993, which he described as finding "material weakness" in Supercuts' internal controls, Mr. Perks did not explain in his report or his deposition what consideration, if any, he gave to the fact that Arthur Andersen did not find any material weaknesses for the audit periods in 1994 and 1995. Expert opinion that is "carefully tailored to support [a] position" is not reliable. *Minasian v. Standard Chartered Bank,* 109 F.3d 1212, 1216 (7th Cir.1997).

Mr. Perks' opinion suffers from an additional, and serious, defect that independently undermines its reliability. Mr. Perks' report reveals that his opinion about the reliability of the internal financial reports is intertwined with, and in part based upon, statements by the Defendant and others that the reports were unreliable and that they considered them to be so.[4] Allowing an opinion about the objective reliability of certain records to be influenced by the subjective statements of an interested party about what he believed does not, in this Court's view, comport with the principles and methodology of the accountancy profession. As a result, Defendant has failed to establish that Mr. Perks' opinion is considered reliable as required for admission under Rule 702.

Mr. Perks' opinion that the internal financial reports are unreliable also would not be helpful to the jury. At the November 19, 1998 status conference, counsel indicated that Mr. Lipson would testify at trial that he believed those reports were unreliable based on, among other things, Arthur Andersen's statements concerning material weakness in 1993, the rapid growth of the company, and the limited abilities of people in Supercuts' accountancy department. If allowed to testify at trial, Mr. Perks substantially would reiterate this testimony, but with the gloss of an expert's opinion that Defendant's asserted belief regarding the unreliability of the internal financial reports was, in fact, correct. However, Defendant has not established that the financial evidence he will testify about is so complicated that the jury will be unable to understand it without repetition by Mr. Perks. For this reason, Defendant has failed to establish that Mr. Perks' testimony would help the jury.

In addition, Mr. Perks' opinion would not assist the jury because, in this Court's view, the actual reliability of the internal reports is not a fact in issue at trial. Defendant argues that if the internal financial reports were unreliable, then as a matter of law they could not be material and could not give rise to insider trading liability. The Court disagrees. As defense counsel conceded during the status hearing on November 19, 1998, if Defendant in fact relied on the internal financial reports in selling the shares (or tipping his son to sell), the

4. *See, e.g.,* Deft.Resp., Ex. A: Perks Report at 4 ("management, including Mr. Lipson, had little faith in the financial information generated internally"); at 7 (quoting Mr. Lipson for proposition that up until he left Supercuts in 1996, the company was never able "to prepare timely, accurate or credible financial statements on a monthly basis"); at 8 (quoting Mr. Lipson for proposition that "the financial data was worthless," and that the finance department was "unable to provide even the most basic information"); at 10 (quoting Mr. Lipson's testimony that in the first quarter of 1995, he "failed to look at any information because of the inability to get accurate or timely information").

fact that he relied on that non-public information would make it material. On the other hand, if Defendant did not pay any attention to the reports, then—whatever the reliability of those reports—there could be no insider trading liability. Thus, in either event, the reliability *vel non* of the internal financial reports would not help the jury understand or determine a fact in issue. *Compare Roback,* 1994 WL 548197, *4 (expert testimony excluded where it would "not aid the jury's understanding of the facts").[5]

## CONCLUSION

The foregoing analysis, of course, is not intended to express any view on the merits of Defendant's defense that he did not rely on internal financial information in engaging in transactions in 1995, or to issue any advisory *in limine* rulings on what documents and lay witness testimony Defendant may offer in aid of that defense. What the Court finds is that Defendant is not entitled to bolster his defense by having Mr. Perks provide under the banner of expert opinion what is, in fact, an extra summation of the evidence that fails to meet Rule 702's standards of reliability and helpfulness.

The Court thus grants the SEC's motion to bar Defendant's expert from testifying (Doc. # 106–1) and to strike Defendant's expert's report (Doc. # 106–2). As a result of this ruling, the Court lifts the stay of expert discovery that has been in place during the pendency of the SEC's motion. The Court sets the matter for a telephone status conference to take place on January 7, 1999 at 9:00 a.m. (Chicago time).

5. Defendant has cited several cases for the proposition that "unreliable" information cannot be material. Two of the cases cited found that "soft" information (such as subjective analysis, opinions, projections, estimates and forecasts) at issue was not material, *Garcia v. Cordova,* 930 F.2d 826, 829–32 (10th Cir.1991); *In re Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 641–44 (3d Cir.1989), and the third case found that "preliminary, contingent and speculative" discussions between two parties that later merged

## MEMORANDUM OPINION AND ORDER

In this action brought under the federal securities laws, plaintiff alleges violations of Section 17(A) of the Securities Act (15 U.S.C. § 77q(a)); Section 10(B) of the Exchange Act (15 U.S.C. § 78j(b)), and Rule 10B–5 thereunder; and Section 16(a) of the Exchange Act (15 U.S.C. § 78p(a)), and Rules 16A–2 and 16A–3 thereunder. These claims arise out of defendant's alleged use of non-public information in trading 365,000 shares of Supercuts stock in March and April of 1995. On December 16, 1998, this Court issued a 15–page Memorandum Opinion and Order granting plaintiff's motion to bar defendant's expert, Ben W. Perks, from testifying at trial and to strike Mr. Perks' Rule 26 report. The case now comes before the Court on defendant's motion to reconsider that ruling.

Whether to grant a motion to reconsider is a matter committed to the sound discretion of the Court. *Caisse Nationale de Credit v. CBI Industries, Inc.,* 90 F.3d 1264, 1270 (7th Cir.1996). Motions to reconsider "should not be a 'Pavlovian Response' to an adverse ruling," *Jefferson v. Security Pacific Financial Services, Inc.,* 162 F.R.D. 123, 125 (N.D.Ill.1995), but—properly used—instead are designed to "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557, 561 (7th Cir.1985) (quoting *Keene Corp. v. International Fi-*

were not material. *Taylor v. First Union Corp. of South Carolina,* 857 F.2d 240, 244–45 (4th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989). The type of information contained in the internal financial reports at issue here is fundamentally different. Those reports include hard revenue and performance numbers, which is a type of information that reasonable investors would consider significant in making investment decisions.

*delity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982).

Thus, a motion to reconsider should only be presented when the law or facts change significantly after the issue is presented to the Court, or the Court has "patently misunderstood a party," has "made a decision outside the adversarial issues presented" to it, or has "made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). A motion to reconsider is not "at the disposal of parties who want to 'rehash' old arguments" that previously were made and rejected. *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D.Ill.1995), or to raise new arguments or evidence that could have been previously offered. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996).

The Court has carefully considered defendant's arguments, which boil down to the contentions that the Court (a) misunderstood the nature of Mr. Perks' testimony, and the way in which it allegedly is tied to appropriate principles of accountancy, and (b) that the Court improperly applied Federal Rule of Evidence 702 and the decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) in finding that Mr. Perks' testimony (as outlined in his report) would not assist a jury. In aid of his motion to reconsider, defendant has tendered two supplemental affidavits prepared by Mr. Perks after the Court issued its ruling on December 16, 1998 (Defendant's Renewed Motion to Reconsider, Exs. C and D), which the Court has considered even though anything that Mr. Perks said in those affidavits could have been offered prior to the Court's ruling and thus, under well settled law, may be disregarded. *Moro*, 91 F.3d at 876. However, neither defendant's arguments nor the supplemental information supplied in Mr. Perks' affidavits persuades the Court that it misunderstood the nature of Mr. Perks' report and his proposed testimony,

or that the Court misapplied the law. Accordingly, the Court finds no reason to change its earlier ruling and, as explained below, defendant's motion to reconsider is denied.

### I.

In excluding Mr. Perks' testimony and report, the Court found that one opinion which Mr. Perks intended to offer was "that Mr. Lipson and others at Supercut did not believe the internal financial reports in March and April 1995 were reliable" (12/16/98 Mem.Op. and Order 9), and that this opinion testimony fails to meet the reliability and helpfulness criteria required for admissibility under Rule 702 (*Id.* 9–10). Defendant does not challenge this ruling, but instead protests that in fact "Mr. Perks was not retained to opine on the credibility of Mr. Lipson's statement that the financial reports at issue were not reliable" (Def.'s Renewed Motion to Reconsider ("Def.'s Motion") ¶ 4).

Although defendant does not object to this portion of the Court's order, the Court wishes to reiterate that it is plain from Mr. Perks' original report (*see, e.g.,* Ex. A to 4/29/98 Def.'s Response to Motion to Bar, at 2, 4, 7, 8, 10), and his deposition (*see, e.g.,* Ex. B to 4/29/98 Def.'s Response to Motion to Bar, at 68–69, 103) that—contrary to defendant's current position—Mr. Perks indeed intended to offer such opinion testimony. The Court views defendant's present reversal of position as a concession, *sub silentio*, that any opinion testimony by Mr. Perks about whether, in fact, defendant or others at Supercuts viewed the internal financial reports as unreliable "falls far short of meeting the reliability and helpfulness criteria set forth in Rule 702" (12/16/98 Mem.Op. and Order 9)—a point that is important to keep in mind as the Court now turns to the other opinion that defendant sought to have Mr. Perks sponsor: that is, that the reports in fact were not reliable.

## II.

The Court found that defendant had failed to establish that his opinion that the internal financial reports at Supercuts in March and April of 1995 were unreliable meets the criteria for admissibility under Rule 702. In so ruling, the Court found that this proposed opinion testimony was unreliable because it was "not sufficiently rooted in the principles and methodology of accountancy" (12/16/98 Mem.Op. and Order 11) and, in addition, would not be helpful to the jury (*Id.* 13–14). Defendant asserts that the Court erred on each of these findings, which we address in turn.

### A.

In the reconsideration briefs, the parties engage in an extended (and often unnecessarily heated) debate about whether Mr. Perks' opinions sufficiently derive from accepted principles and methodology of accountancy to satisfy Rule 702. Much of this debate is a rehash of the even more extended debate between the parties on plaintiff's original motion to strike and bar, which the Court carefully reviewed and considered before issuing its Memorandum Opinion and Order. Nothing that is offered in the reconsideration briefing persuades the Court that it erred in finding that Mr. Perks' opinion concerning the reliability of the internal financial reports is insufficiently grounded in principles and methodology of accountancy to be admissible.

Although the Court finds it unnecessary to review in detail all of the evidence and argument cited by the parties, the Court does wish to comment on the proposition—offered by defendant—that it was appropriate for Mr. Perks to "consider [ ] the statements of Mr. Lipson in forming his opinion" (Def.'s Motion # 13). Defendant's argument misses the point, as the Court did not find fault with the mere fact that Mr. Perks interviewed Mr. Lipson (or others) at Supercuts about the reports. It would have been one thing had Mr. Perks simply interviewed Mr. Lipson and others

at Supercuts for the purpose of learning relevant, *objective* facts about the internal financial reports—such as, for example, who was involved in their preparation, what were the sources of information used, how was the information compiled, how was the information checked, or how was it verified. However, Mr. Perks' report and deposition testimony make it clear that he went far beyond searching for objective facts: instead he allowed his opinion to become "intertwined with, and in part based upon, statements by the Defendant and others that the reports were unreliable and that they considered them to be so" (12/16/98 Mem.Op. and Order 12 and n. 4).

In granting the plaintiff's motion, this Court stated that "[a]llowing an opinion about the objective reliability of certain records to be influenced by the subjective statements of an interested party about what he believed does not, in this Court's view, comport with the principles and methodology of the accountancy profession" (12/16/98 Mem.Op. and Order 12). Defendant has offered nothing on reconsideration to demonstrate otherwise.

### B.

Defendant also takes issue with the Court's finding that "Mr. Perks' opinion that the internal financial reports are unreliable also would not be helpful to the jury" (12/16/98 Mem.Op. and Order 12). *First*, defendant says that Mr. Perks' testimony is "necessary to educate the lay jury about principles of accrual accounting, pooling, variable contribution and the significance of a material weakness in internal controls" (Def.'s Motion ¶ 17). If that had been defendant's sole purpose in calling Mr. Perks, the Court doubts there would have been any motion practice regarding his testimony. However, Mr. Perks' report made clear that it was never defendant's intention to offer Mr. Perks merely as an expert "background" witness to teach the jury certain accounting concepts. As defendant concedes (Def.'s Motion

¶ 17), the defendant (and no doubt other witnesses) will be qualified and able to explain to the jury any necessary accounting concepts from the defendant's perspective.

What defendant in fact sought to have Mr. Perks do is offer opinion testimony about the reliability in fact of the reports, and defendant's subjective belief as to their reliability in the first quarter of 1995. Defendant cannot justify calling Mr. Perks as an expert to offer those opinions, which the Court has found would not be reliable and helpful, by arguing that Mr. Perks might be able to offer other testimony or opinions that could be helpful to the jury.

*Second,* defendant takes issue with the Court's view that the actual reliability of the internal reports is not a fact in issue at trial (12/16/98 Mem.Op. and Order 13–14). Defendant urges that in order for defendant to persuade the jury that he in fact did not pay attention to the reports because they were unreliable, he must have the expert testimony of Mr. Perks showing that the reports were unreliable. In short, defendant wants to have Mr. Perks' opinion that the reports were unreliable, because defendant believes that will make it more likely that the jury will accept defendant's testimony that defendant thought the reports were unreliable and thus ignored them. However, whether or not the actual reliability of the internal reports in March and April of 1995 is a fact in issue at trial, defendant is not entitled to have the credibility of defendant's testimony bolstered by an expert opinion that is not sufficiently rooted in the principles and methodology of accountancy.[1]

*Third,* defendant also quarrels with the Court's analysis that the internal financial reports, which contained accounting information, would be material irrespective of their accuracy or reliability (Def.'s Motion ¶ 19). In reaching that conclusion, the Court found that the authorities offered by

defendant during the original briefing for the proposition that "unreliable" information cannot be material were inapposite; those cases did not deal with hard revenue and performance numbers but instead "soft" information such as subjective analysis, opinions, projections, estimates and forecasts. (12/16/98 Motion Op. and Order 14 n. 5). In seeking reconsideration, defendant argues that the information contained in the Supercuts internal financial reports also contain certain preliminary estimates. However, the internal company reports that plaintiff claims the defendant relied on or reports containing revenue and performance information, which fits the definition of "hard" information. The fact that some of that hard data may have been unreliable (according to defendant), or may have been later revised in some respects, does not convert that information in "soft" information. The Court finds no basis to alter its previous analysis on this point.

As was true with its original opinion (12/16/98 Mem.Op. and Order 14), this opinion on reconsideration expresses no view on the merits of defendant's defense that he did not use the internal financial reports in engaging in trades in 1995. What the Court found—and still finds—is that Mr. Perks' opinion testimony about the reliability of the reports is not sufficiently rooted in principles and methodology of accountancy. The Court does not believe that it will advance the search for truth to allow defendant to testify that he did not view the internal reports because he believed them unreliable, and then to allow defendant to bolster that testimony by having Mr. Perks (with the patina of an independent expert) opine that he also does not believe that the reports were reliable—an opinion based in part on Mr. Perks being told by the defendant that he did not think that the reports were reliable. While such circular opinion testimo-

---

1. Although plaintiff did not seek reconsideration, plaintiff does invite the Court to alter this portion of the Memorandum Opinion and Order to make it more to plaintiff's liking (Plaintiff's Mem. 1–2 n. 1). The Court declines the invitation.

ny might assist defendant, it will not assist the jury.

## CONCLUSION

For the foregoing reasons, the Court denies defendant's motion to reconsider (doc. # 168–1) the December 16, 1998 Memorandum Opinion and Order granting plaintiff's motion to bar defendant's expert from testifying and to strike defendant's expert's report. The matter is set for status on Friday, April 30, 1999 at 9:30 a.m. for submission of the final pretrial order.