In re Vincent CRISOMIA, Sr. and Dolores J. Crisomia, Debtors.

Vincent Crisomia, Sr. and Dolores J. Crisomia Plaintiffs,

v.

Parkway Mortgage, Inc., Classic Exteriors by Alan Cherry, Inc., Citifinancial Mortgage Co., the Chase Manhattan Bank, Defendants.

Parkway Mortgage, Inc., Cross–Claimant,

Vincent Crisomia, Sr. and Dolores Crisomia, Cross–Defendants.

Bankruptcy No. 00–35085DWS. Adversary No. 00–0938.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 4, 2002.

Wayne C. Berry, Esquire, Philadelphia, PA, for Plaintiffs/Cross Defendants.

Brett L. Messinger, Esquire, Inez M. Markovich, Esquire, Duane, Morris & Heckscher, Llp, Philadelphia, PA, for Defendant The Chase Manhattan Bank.

Sharon Morgan, Esquire, John C. Miller, III, Esquire, Mattleman Weinroth & Miller, Cherry Hill, PA, for Defendant/Cross Claimant—Parkway Mortgage Inc.

Ross Begelman, Esquire, Omid Niknam, Esquire, Cherry Hill, NJ, for Defendant Alan Cherry, Inc.

### MEMORANDUM OPINION

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the Motion to Exclude Expert Witness (the "Motion") filed by debtors and plaintiffs Vincent and Dolores Crisomia ("Plaintiffs" or the "Crisomias") in the above referenced adversary case wherein the Plaintiffs seek, *inter alia,* to reduce the secured claim of defendant Chase Manhattan Bank ("Chase") pursuant to various federal and state consumer protection statutes.[1] At issue in this motion is Plaintiffs' challenge to Chase's use of the expert report and testimony of Harris Schechtman ("Schechtman") at trial. For the reasons that follow, the Motion will be denied with certain protections afforded to Plaintiffs to ameliorate any prejudice from so doing.

### BACKGROUND

Pursuant to this Court's Pretrial Order, Plaintiffs, Chase and defendant Greenfield Liquidation Corporation filed a Joint Pretrial Statement which identified Schechtman, a residential and commercial mortgage broker and owner of American Federal Mortgage Services and American Federal Capital Group, Inc., residential mortgage companies, as an expert witness to be called by Chase. In support of that intention, Schechtman offered his written expert report dated June 27, 2002 (the "Report"), Exhibit "A" to Motion, in

---

1. The issues in this adversary case have been narrowed as a result of several dispositive motions.

which he identified the material he reviewed and the opinions he rendered therefrom. The opinions were as follows:

(1) The Truth–In–Lending Disclosure Statement provided to the Crisomias is in the same form used throughout the industry, complies with the disclosure requirements used throughout the country and conforms to Regulation Z;

(2) There is nothing on the face of the documents contained in the loan binder which shows a defect in the Disclosure forms;

(3) The calculated figures contained on the Truth–In–Lending Disclosure form are correct;

(4) The Section 32 worksheet was accurately completed and shows that the loan did not exceed the 8% threshold;

(5) There is nothing unreasonable or even out of the ordinary for the application fee of $365.00 not to include the cost of an appraisal, credit report and flood certificate.

(6) Chase should have viewed the application fee, appraisal fee, credit report fee, and flood certificate as reasonable;

(7) The appraisal fee of $375.00 is not unreasonable;

(8) The appraisal fee consists of an appraisal fee of $275.00 and a reinspection fee of $100.00;

(9) The Crisomias misinterpreted the appraisal fee;

(10) The recording fee of $106.00 and the settlement fee of $495.00 are reasonable; and

(11) "It is reasonable for an assignee of a loan to have concluded that the prepaid finance charges were accurate."

Report at 2–3. To support opinions one through four, the expert identified the material and reasoning he utilized in reaching the various opinions. On the other hand, to support opinions five through eleven, the expert simply stated that he based his opinions on "[his] professional experience in placing loans for over 12 years." *Id.*

At a pretrial hearing held on October 24, 2002, Chase proffered a supplement to the Report dated October 8, 2002 (the "Supplemental Report"), Exhibit D–1, outlining the principles and methodologies underlying opinions five through eight, and ten. This report was apparently a response to my opinion denying Chase's motion for partial summary judgment ("Summary Judgment Motion") based on the Report which I found to be inadequately supported. *Crisomia v. Parkway Mortgage et al. (In re Crisomia)*, 2002 WL 31202722, at *6 (Bankr.E.D.Pa. September 13, 2002).

In support of the Motion, Plaintiffs rely on Federal Rule of Evidence 702 arguing that Schechtman's testimony should not be permitted as, judging from the Report, it would lack the requisite reliability. Plaintiffs also object to Chase's effort to rehabilitate its expert witness by proffering the Supplemental Report which they contend should be rejected as untimely.

**DISCUSSION**

Federal Rule of Evidence 702 allows a witness to testify as an expert if scientific, technical, or other specialized knowledge will assist the trier of fact. The witness must be qualified as an expert by knowledge, skill, experience, training, or education, and the witness may testify in the form of an opinion or otherwise, "if (1) the testimony is based on sufficient facts or data, (2) the testimony is the products of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

In applying Rule 702, the Third Circuit Court of Appeals has developed a three part analysis. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741–43

(3rd Cir.1994) (hereinafter "Paoli") (identifying three requirements as "qualifications," "reliability," and "relevancy" or "fit"). First, "the witness proffered to testify to specialized knowledge must be an expert." *Id.* at 741. The Third Circuit has interpreted this requirement liberally, holding "[t]hat a broad range of knowledge, skills, and training qualify an expert as such." *Id.* This liberal policy applies to substantive as well as formal qualifications. *Id.* Schechtman's credentials are not challenged in this Motion.

■ The second component, referred to as the reliability test, is the thrust of the Plaintiffs' objection. It requires a trial court to perform a general gatekeeping function to determine if an expert's opinions are reliable. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This requirement was expanded by the United States Supreme Court to include scientific as well as other types of expert testimony, *i.e.,* testimony based on technical or other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The reliability test in *Daubert* is flexible, and the factors identified therein [2] are not intended as necessary, exclusive, or exhaustive. *Kumho,* 526 U.S. at 141–42, 119 S.Ct. 1167 (as the *Daubert* factors are illustrative, a trial court is granted broad discretion and could consider other factors to determine admissibility). Accordingly, the four factors first articulated in *Daubert* have been expanded by the lower courts to include the following as probative of the reliability of an expert's testimony:

(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses [to which the method has been put.]

*Paoli,* 35 F.3d at 742 n. 8; *see also Bowersfield v. Suzuki Motor Corp.,* 151 F.Supp.2d 625, 628–29 (E.D.Pa.2001) (citations omitted).

■ The factors relevant to determine reliability should be applied to the principles and methodologies, rather than the expert's opinions. *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786 (stating that "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate"). For an opinion to be reliable, the opinion must be squarely grounded in principles and methodology of the relevant discipline, no matter how impressive the expert's credentials may be. *SEC v. Lipson,* 46 F.Supp.2d 758, 762 (N.D.Il.1998). The mere fact that an expert states that a methodology is valid, does not require the court, acting in the gatekeeper capacity, to admit opinion evidence based on a methodology. *See General Electric Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (stating that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). In other words, "the fact that [a witness] is an

---

**2.** The *Daubert* Court articulated the four factors as follows: "(1) [W]hether [a theory or technique] can be (and has been) tested; (2) [W]hether the theory or technique has been subjected to peer review and publication; (3) [T]he known or potential rate of error; and (4) general acceptance [of the theory or technique]." 509 U.S. at 593–94, 113 S.Ct. 2786.

[accountant]– and thus generally possess the specialized knowledge to qualify as an expert witness under the proper circumstances does not automatically render his opinion in [a] case reliable." *Lipson*, 46 F.Supp.2d at 762. Notwithstanding that an opinion is within the type the court could expect from a specific expert, an opinion based on training and experience, without more, is unreliable because it is not based on applicable principles and methodologies. *Id.* at 763. The reliability inquiry is intensively fact based, and reliability should be determined by a trial judge on a case by case basis, reviewable for abuse of discretion. *Kumho*, 526 U.S. at 158, 119 S.Ct. 1167.

In *Lipson*, the court rejected expert testimony by an accountant concerning whether, in his expert opinion, the defendant believed the internal financial reports of a corporation were reliable. 46 F.Supp.2d at 763. The court held that this testimony did not satisfy the reliability test established in *Daubert* because the testimony was not based on principles and methodologies of the accountancy profession, but rather, the accountant's years of training and experience combined with subjective statements of the defendant and employees of the defendant's corporation. *Id.* The *Lipson* court also rejected the expert's testimony regarding whether the company's internal reports were, in fact, reliable. *Id.* at 763–64. The court held that the testimony was unreliable because the accountant did not prepare an audit of the internal financial reports, did not per-

form an analysis of the internal financial reports to determine reliability, and did not compare the internal financial reports to those filed publicly by the corporation for the years in question. *Id.* at 764. Rather, the court found that the accountant relied, in part, on subjective statements of an interested party in forming, what should have been, an objective opinion. *Id.*

In the instant case, the Report is sufficiently lacking in the principles and methodologies underlying opinions five through eleven necessary to render the expert's testimony reliable. Similar to the accountant in *Lipson*, Schechtman relies on his years of training and experience as a mortgage broker as sole support for the conclusions he renders. While Chase would have me conclude that *United States v. Riccobene*, 709 F.2d 214, 230–31 (3d Cir.1983) compels a contrary conclusion, I respectfully disagree. The issue in *Riccobene* was whether the witness had sufficient qualifications to testify as an expert to define certain terms, not the reliability of his opinions. Principles and methodologies were not implicated by the testimony which "was to be considered only for its definitional value." *Id.* However, my disagreement with Plaintiffs on the evidentiary value of the Report is not dispositive since the Supplemental Report sufficiently outlines the principles and methodologies underlying opinions five[3] through eight, and ten, although still not elaborating on opinions nine[4] and eleven.[5]

---

**3.** Although not specifically articulated in either report, I believe there is sufficient material contained throughout the two reports to establish the basis for opinion five.

**4.** Without more, this factual issue does not appear to require the assistance of an expert. *See Lipson*, 46 F.Supp.2d at 763 (recognizing that expert testimony must assist the trier of fact in understanding what otherwise might

be outside its grasp, but must not be allowed to invade quintessential trier of fact functions).

**5.** This "opinion" appears to affirm potential testimony by a Chase representative that Chase concluded that the prepaid finance charges were accurate. It seeks to confirm that it was reasonable for Chase to draw this conclusion without stating an underlying rea-

Had the expert failed to supplement the Report, either through testimony at a *Daubert* (or similar) hearing or a supplemental report, the opinions would have been unreliable.[6]

The third and final determination by a trial court requires that an expert's opinions be relevant.[7] Plaintiffs have not raised a relevancy objection to the expert's report or testimony.

Applying the above referenced authority to the matter before me, I easily conclude, as I presaged in the Summary Judgment Opinion, that the Report does not possess the requisite reliability to support all the opinions reached by Schechtman. On the other hand, the Supplemental Report appears to sufficiently cure the deficiencies of the Report so as to allow Schechtman's testimony at trial. However, that document and the testimony that would flow therefrom appears only now on the eve of trial after a protracted pretrial period. Whether Schechtman should be permitted to testify over the objection of the Plain-

tiffs based on his Supplemental Report is the next question.

Federal Rule of Civil Procedure 26(a)(2)(B) requires that, absent stipulation or court order that provides otherwise, a witness who is retained to provide expert testimony in a case, must provide a written report prepared and signed by the witness. Furthermore,

> [t]he report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor, the data or other information considered by the witness ..., any exhibits ..., the qualifications of the witness, including a list of all publications ... within the preceding ten years, the compensation ..., and a listing of any other cases in which the witness has testified as an expert at trial or by deposition.

F.R.Civ.P. 26(a)(2)(B).

■■■■ The purpose of the expert report under Rule 26 is to provide, in substance, the expert's direct testimony at trial, allowing an opponent, if desired, to dispense with a expert's deposition. *Lip-*

---

son why such is the case. In *Lipson,* the defendant was the president of a corporation. While he was the president, he liquidated his stock in the company. It was alleged by the SEC that the defendant utilized non-public information when he decided to liquidate his stock. Potential expert testimony consisted of the expert stating that the defendant did not rely on the internal financial records in determining whether to liquidate the stock. The court characterized this testimony as, at worst, speculative, and, at best, credibility testimony. *Id.* at 763. The court held that expert testimony must not be used to assist the trier of fact in determining the credibility of the defendant. *Id.* The question of credibility is to be resolved by the trier of fact, based on the testimony of the defendant, without having the testimony bolstered by an expert. *Id.* at 768 (stating that a party "is not entitled to have the credibility of [a witness] bolstered by an expert opinion that is not sufficiently rooted in principles and methodologies"). Schechtman is entitled to state that the pre-

paid finance charges were accurate and how he came to that conclusion. To the extent he has done so in his Report, he may be able to establish the relevancy of this view. Relevancy issues are best reserved for trial. *See* note 7 *infra.*

6. While opinions nine and eleven are still unreliable, this deficiency is not cause for disqualification of the expert witness but rather goes to the weight to be accorded his testimony by the trier of fact.

7. To determine if the expert's testimony is relevant, the expert testimony must be, "sufficiently tied to the facts of the case that it will aid the [trier of fact] in resolving a factual dispute." *U.S. v. Downing,* 753 F.2d 1224, 1242 (3d Cir.1985); *see Daubert,* 509 U.S. at 591, 113 S.Ct. 2786 (explicitly citing this language from *Downing* in describing the "relevancy" or "fit" requirement of Fed.R.Evid. 702).

*son,* 46 F.Supp.2d at 763 n. 3 (interpreting the *Advisory Committee Notes to 1993 Amendments to Rule 26(a)(2)).* The Third Circuit Court of Appeals has adopted a liberal policy concerning the admissibility of expert testimony. *E.g. Paoli,* 35 F.3d at 741. Therefore, absent prejudice, surprise or bad faith, an expert may testify beyond the scope of his expert report, assuming the matters are within the expert's expertise. *E.g., Bowersfield,* 151 F.Supp.2d at 631.

To determine whether prejudice, surprise or bad faith exists, the Third Circuit has adopted a test requiring a four-part inquiry by the trial court as follows:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;

> (2) the ability of that party to cure the prejudice;

> (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and

> (4) bad faith or willfulness in failing to comply with the court's order.

*Id.* at 631–32 (*quoting DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1201–02 (3rd Cir.1978)) (recognizing that the four-part test was first articulated in *Meyers v. Pennypack Woods Home Ownership Assn.,* 559 F.2d 894, 904 (3rd Cir. 1977), *overruled on other grounds by, Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3rd Cir.1985)). In applying the four-part test, a trial court must consider that the exclusion of critical evidence is an extreme and drastic sanction, *Meyers,* 559 F.2d at 905.

■ Assuming a trial court determines that an opposing party would be unfairly prejudiced or surprised by admitting the evidence, the inquiry does not end. The trial court must determine whether the unfair surprise or prejudice is curable. *See, e.g., Bowersfield,* 151 F.Supp.2d at 632. Prejudice or surprise may be cured by: (1) reopening discovery; (2) permitting the opposing party the opportunity to depose the expert; (3) permitting the opposing party the opportunity to review and counter the new evidence with expert testimony; and (4) where no expert exists, permitting the retention of an expert. *Id.*[8]

■ I agree that allowance of Schechtman's testimony as bolstered now by his Supplemental Report would be unfairly prejudicial to Plaintiffs since they have not had the opportunity to take his deposition or retain their own expert with the benefit of full disclosure of the basis of his opinions.[9] However, exclusion of Schechtman

---

**8.** In *Bowersfield,* an expert report contained ten conclusions, but did not contain an elaborate discussion of the principles and methodologies the expert relied upon. During a *Daubert* hearing, the expert elaborated substantially on the basis of his conclusion and the substance of his report. The court held that the elaboration resulted in unfair surprise or prejudice but admitted the supplementary evidence nonetheless because unfair prejudice or surprise could be easily cured. The court reopened discovery, allowed the opponent to respond through supplementary expert reports and, because no depositions had been taken, permitted both parties the opportunity to depose each other's experts.

**9.** Chase's argument that no prejudice or unfair surprise results from its attempt to shore up Schechtman's opinion is supported by several Eighth Circuit cases which I find inapposite. In *Thudium v. Allied Products Corp.,* 36 F.3d 767 (8th Cir.1994), no unfair surprise was found because the testimony at trial consisted of logical inferences drawn from previous testimony, the complaining party had notice of the expert's intention to offer the testimony and the complaining party defended the testimony at trial with its own experts. In this case, the lack of foundation for Schechtman's opinions as set forth in the Report could not put Plaintiffs on notice to defend and as a result formulate, with

is too drastic a remedy if the prejudice may be readily cured. Plaintiffs do not contend nor is there any evidence that Chase has acted in bad faith. Rather it acted promptly after the denial of its Summary Judgment Motion to request Schechtman to expand his Report. The solution fashioned by the *Bowersfield* court is the appropriate course in this contested matter. I will reopen discovery to allow Plaintiffs to depose Schechtman if they so desire. Moreover, Plaintiffs will be permitted to designate their own expert with a similar opportunity for Chase to depose him or her after reviewing the expert's report. While Plaintiffs have not included an expert on their witness list, they may have felt no need to do so given the quality of the expert testimony presaged by the Report. With the expanded expert report, they are free to rethink that strategy. Since this adversary proceeding has not been set for trial, this additional discovery will not be disruptive to the parties or witnesses and does not impact on this Court's otherwise fully scheduled calendar.

An Order consistent with this Memorandum Opinion shall issue.

### ORDER

**AND NOW**, this 4th day of December 2002, upon consideration of the Motion to Exclude Expert Witness (the "Motion") filed by debtors and plaintiffs Vincent and Dolores Crisomia in the above-referenced adversary case, after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **DENIED** on the following conditions:

1. Discovery is reopened for the sole purpose of allowing Plaintiffs to depose Harris Schechtman and to retain their own expert who may be added as a witness to the list of witnesses set forth on the Joint Pretrial Statement.

2. Plaintiffs shall advise Chase, with a copy to the Chambers, by **December 16, 2002** of their intention to take Schechtman's deposition and whether they shall be engaging their own expert and if so, when (consistent with the date below) his/her report will be produced. Chase may thereafter take the deposition of Plaintiffs' expert if it so chooses.

3. By **January 24, 2003** the matters allowed in paragraph 2 shall be completed and this adversary proceeding shall be set for trial.

4. If Plaintiffs do not intend to take any further discovery or retain an expert, the Court will proceed to set the adversary proceeding for trial on its next available date without awaiting the conclusion of the new discovery period.

---

their own expert, opposing views. *Phil Crowley Steel Corp. v. Macomber, Inc.,* 601 F.2d 342 (8th Cir.1979) is fundamentally different from the facts here because no move was made to exclude the additional evidence which had been proffered before trial and it appeared that the complaining party was able to rebut it without any additional preparation.