OXFORD GENE TECHNOLOGY
LIMITED, Plaintiff,

v.

MERGEN LTD., et al., Defendants.

No. CIV.A. 02–1695–KAJ.

United States District Court,
D. Delaware.

Nov. 16, 2004.

Richard K. Herrmann, Esq., Blank Rome LLP, Wilmington, DE, Of Counsel: Mark A. Pals, Esq., Imron T. Aly, Esq., Bryan S. Hales, Esq., and Stephen T. Webb, Esq., Kirkland & Ellis LLP, Chicago, IL, counsel for plaintiff.

Philip A. Rovner, Esq., Potter Anderson & Corroon LLP, Hercules Plaza, Wilmington, DE, Of Counsel: Paul J. Andre, Esq., Lisa Kobialka, Esq., and Ulysses S.T. Hui, Esq., Perkins Coie LLP, Menlo Park, CA, counsel for defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

This is a patent infringement case. Presently before me are two motions. First, is a motion filed by plaintiff, Oxford Gene Technology Limited ("OGT"), to exclude from evidence the expert opinions of Paul E. Purdue and Dr. William R. Latham III (D.I. 196; "OGT's Motion to Exclude"). Second, is a motion filed by defendant, Mergen Limited ("Mergen") to exclude the testimony of OGT's willfulness expert Charlotte H. Coperthite (D.I. 188; "Mergen's Motion to Exclude"). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338. For the reasons that follow, OGT's Motion to Exclude is granted with respect to Dr. Purdue's opinion as to anticipation, granted in part and denied in part with respect to Dr. Purdue's opinion as to obviousness, and denied with respect to Dr. Latham. Mergen's Motion to Exclude is granted in part and denied in part.

## II. BACKGROUND

United States Patent No. 6,054,270 (the " '270 patent"), entitled "Analying [sic] Polynucleotide Sequences," issued on April 25, 2000 and names Edwin Southern as inventor. (D.I. 1, Ex. 1.) The patent is assigned to OGT. (*Id.* at 4.) In particular, the '270 patent discloses methods of making and using arrays of oligonucleotides in analyzing a polynucleotide. (D.I. 238 at 4; '270 patent, Abstract.)

OGT filed a complaint for patent infringement against Mergen on December 23, 2002.[1] (D.I. 1.) OGT alleges that Mergen is directly infringing claim 1 and contributorily infringing and/or inducing oth-

---

1. Originally, OGT filed a complaint against Mergen; Clontech Laboratories, Inc., doing business as BD Biosciences Clontech; Genomic Solutions Inc.; PerkinElmer Life Sciences, Inc.; Axon Instruments, Inc.; and BioDiscovery, Inc. (D.I. 1.) OGT having settled with the others, the only remaining defendant in this dispute is Mergen.

ers to infringe claims 9 and 10 of the '270 patent "by making, using, offering for sale, or selling products, and/or services relating to oligonucleotide arrays." (D.I. 1 at 4; *see* D.I. 180 at 1.) On February 19, 2003, Mergen filed a counterclaim for a declaratory judgment of noninfringement and invalidity of the '270 patent. (D.I. 25.) The procedural and factual background of the case and a discussion of the technology disclosed in the patent-in-suit are set forth in the prior opinion construing the disputed claim terms. (D.I. 237, 238); *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, No. 02–1695–KAJ, 2004 WL 2211971, 2004 U.S. Dist. LEXIS 19818 (D.Del. Sept.29, 2004).

Mergen provides products and services relating to the use of DNA microarrays. (D.I. 187, Ex. D at MRG047134, Ex. E.; D.I. 186 at 7.) These microarrays, such as Mergen's ExpressChip DNA Microarrays ("ExpressChip") are pre-spotted with oligonucleotides synthesized "off-chip." (D.I. 187, Ex. D at MRG047134, MRG047146; *see* D.I. 186 at 7.) The services Mergen offers related to the arrays includes "probe labeling, hybridization, detection, and data analysis." (D.I. 187, Ex. E at 3.) Mergen also provides custom microarray products and services specifically addressing a customer's array requirements. (*See id.*)

## III. STANDARD OF REVIEW

■ Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir.1994) (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard) (internal citations omitted).

## IV. DISCUSSION

Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed.R.Civ.P. 26(a)(2)(B).

Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Rule 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise ...." The party offering the expert testimony has the burden of proving admissibility. *See Daubert*, 509 U.S. at 592 n. 10, 113 S.Ct. 2786 (citation omitted). The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation. *Id.* at 589–590, 113 S.Ct. 2786. Further, Rule 702 requires that expert testimony assist the trier of fact, in other words, it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591–92, 113 S.Ct. 2786.

■ In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id.* at 592–93, 113 S.Ct. 2786. As part of that inquiry, the court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the method-

ology used." *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 153 (3d Cir.1999).

■ A party can only elicit expert testimony from someone who has specialized knowledge or training sufficient to qualify him or her to opine on an issue within their field of expertise, and the expert's opinion must be confined to that field. *See Redman v. John D. Brush & Co.,* 111 F.3d 1174, 1179 (4th Cir.1997) (metallurgist not qualified to testify about industry standards for safes); *Barrett v. Atl. Richfield Co.,* 95 F.3d 375, 382 (5th Cir.1996) (expert not qualified to testify about correlation of chemical effects on rats and on humans). Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the factfinder. *See McGowan v. Cooper Indus., Inc.,* 863 F.2d 1266, 1273 (6th Cir.1988) (expert on standard of care should not have been permitted to opine on breach of that standard because the jury was equally qualified to make that determination); *S.E.C. v. Lipson,* 46 F.Supp.2d 758, 763 (N.D.Ill.1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

## A. OGT's Motion to Exclude

### 1. Dr. Paul E. Purdue

Mergen retained Dr. Purdue as an expert on the issues of patent validity and infringement. (D.I. 211 at 2.) OGT's Motion to Exclude focuses solely on Dr. Purdue's expert opinion on patent validity. (D.I. 197 at 1.) OGT argues that two "fundamental flaws" render Dr. Purdue's opinion on validity "inherently unreliable and, thus inadmissible under *Daubert* ...." (*Id.*) Those flaws are that Dr. Purdue (1) "neither offers nor adopts any claim constructions despite offering opinions that certain claims are invalid" and (2) "skips

the second required step of comparing claim elements to the prior art ... [by making] naked conclusions of anticipation and obviousness." (*Id.*) In addition, OGT argues that the "conclusory nature of Dr. Purdue's ... report violates ... [Federal Rule of Civil Procedure] 26(a)(2)(B)." (*Id.*) I agree with much of OGT's argument. Accordingly, except as to Dr. Purdue's opinion regarding obviousness based on the '726 application in combination with the '373 patent, Dr. Purdue's opinion on the issues of anticipation and obviousness will be excluded from evidence.

■ "It is well-established that the first step in any validity analysis is to construe the claims of the invention to determine the subject matter for which patent protection is sought." *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.,* 183 F.3d 1347, 1353 (Fed.Cir.1999) (internal citations omitted). OGT argues that Dr. Purdue "ignored this fundamental first step." (D.I. 197 at 4.) Mergen responds by pointing to Dr. Purdue's deposition testimony, where Dr. Purdue states that while he did not set out his claim construction "in a separate section" of his report, it is "brought out in the paragraphs" analyzing the validity of the '270 patent. (D.I. 212, Ex. D at 198:24–199:2, Paul Edward Purdue, Ph.D. Dep., July 14, 2004; D.I. 211 at 12.) Mergen argues that Dr. Purdue construes the claim terms in the alternative when he states:

> It is my understanding that OGT is attempting to interpret the asserted claims of the '270 patent, claims 1, 9, and 10, in such a way to cover methods of making arrays of oligonucleotides and methods of analyzing polynucleotides that would not require monomer by monomer synthesis of the oligonucleotides on the surface of an impermeable support used in the hybridization, nor

that the oligonucleotide be directly attached to the surface of the impermeable support. If these features would not be included in the claimed invention of the '270 patent, then it is my opinion that the asserted claims of the '270 patent would be invalid as anticipated and/or obvious in view of the following prior art.

(D.I. 212, Ex. A, ¶ 22; D.I. 211 at 12.) Further, Mergen argues that OGT is partially responsible for Dr. Purdue's failure to clearly identify his interpretation of the meaning of the claim terms because OGT "purposefully decided not to ask Dr. Purdue a single substantive question about claim construction relevant to the Purdue Expert Report." (*Id.* at 13.)

■ The second step in evaluating the validity of a patent is to perform an element-by-element comparison of each claim to each prior reference. *See Moore N. Am., Inc. v. Poser Bus. Forms, Inc.*, No. Civ.A. 97–712–SLR, 2001 WL 253117, at *3 (D.Del. Mar.8, 2001) (citing *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed.Cir.1998)). For anticipation, each and every limitation must be found either expressly or inherently in a single prior art reference. *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed.Cir.1998) (citation omitted). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed.Cir. 1991). An obviousness inquiry requires a determination of "whether the claimed invention would have been obvious as a legal matter, based on underlying factual inquiries including: (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) secondary considerations of nonobviousness." *Smiths Indus. Med. Sys., Inc. v. Vital Signs*, Inc., 183 F.3d 1347, 1354 (Fed. Cir.1999) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)). The existence of each element of a claim in the prior art, however, does not demonstrate obviousness. *Moore N. Am.*, 2001 WL 253117, at *5. Instead, there must be a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Smiths Indus. Med. Sys.*, 183 F.3d at 1353.

■ The law cited above is clear. In opining that the '270 patent is invalid, Dr. Purdue should have followed the approach outlined above, but he did not. Mergen's assertion that his claim construction is "brought out in the paragraphs" does not withstand scrutiny. Dr. Purdue did not provide a clear construction of each disputed claim element. What he did do, however, was apply a negative or alternative construction of the claims of the '270 patent and make blanket conclusions of invalidity based on "anticipation and/or obviou[ness]," assuming the court found that such construction did not apply. (D.I. 212, Ex. A, ¶ 22.) Dr. Purdue's failure to disclose a clear construction of each disputed claim element makes his report less than helpful to the trier of fact, in contravention of Federal Rule of Evidence 702. *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785, at *4 (N.D.Ill. Feb. 28, 2003) (granting a motion to strike Dataquill's expert's report under Rules 702 and 26(a)(2)(B) in part because it was not clear what or whose interpretation of the claims the expert applied in his analysis and would therefore not assist the trier of fact under Rule 702, and also because he failed to state the basis and reasons for his opin-

ion under Rule 26(a)(2)(B)). Furthermore, according to Federal Rule of Civil Procedure 26(a)(2)(B) and contrary to Mergen's argument, OGT is not required to depose Dr. Purdue to develop what his opinion is or the reasons for it. *Bonesmo v. The Nemours Found.*, 253 F.Supp.2d 801, 811 (D.Del.2003). Dr. Purdue was required by Rule 26(a)(2)(B) to provide in his report "the basis and reasons" of his opinion.

Even assuming that it were possible to determine what claim construction Dr. Purdue applied to claims 1, 9, and 10 of the '270 patent, he clearly did not undertake in the report the second step of either an anticipation or obviousness analysis because he did not perform an element-by-element comparison of each claim to each prior art reference. A chart, prepared after the fact by Mergen's counsel, shows a side-by-side comparison of each element of the '270 patent to the '726 reference (*see* D.I. 211, App. 1), but that belated attempt to patch the holes in Dr. Purdue's report is inadequate in itself to satisfy Rule 26(a)(2)(B). Regarding anticipation, the report is wholly and irretrievably inadequate. As to obviousness, however, other submissions by Mergen are sufficient to serve as a supplementation which I will accept to save a portion of Dr. Purdue's proposed testimony.

#### a. Anticipation

As to anticipation, Dr. Purdue failed to perform an appropriate analysis because he did not compare, element-by-element, the '726 reference to each asserted claim of the '270 patent. Although he described the invention disclosed in the '726 application, he did not identify which specific claim limitations of the '270 patent are or are not disclosed in the '726 application. He simply omitted that essential analytical step.

Further, it is clear that, contrary to the conclusion expressed in the report, the '726 reference does not anticipate any of the three claims of the '270 patent at issue because the '726 reference does not contain the "impermeable surface" limitation of the '270 patent. (D.I. 212, Ex. A, at ¶ 23, Expert Report of Paul Edward Purdue, Ph.D.; D.I. 211, App. 1.) All three claims at issue require "an impermeable surface of a support." ('270 patent, col. 15, II. 49–50, col. 16, II. 49, 63.) The '726 reference does not reveal that limitation.

Dr. Purdue himself has recognized that his opinion on anticipation is fundamentally flawed on this point. When asked at his deposition whether "any prior art reference invalidates any claim of the '270 patent" in regards to anticipation, Dr. Purdue responded that "none of them do on their own." (D.I. 193, Ex. 5, 186, at 14:01:03 12–14:01:37 25, Paul Edward Purdue Ph.D. Dep., July 14, 2004.) His deposition testimony thus directly contradicts his report. Because the '726 application does not contain each and every element of either claim 1, 9, or 10 of the '270 patent, it does not anticipate the '270 patent.

#### b. Obviousness

With regard to obviousness, Dr. Purdue's expert report consists of his discussion of five alleged prior art references and his conclusion that a combination of some or all of them render the '270 patent obvious. Dr. Purdue does not undertake the required element-by-element comparison to show that each and every limitation in the asserted claims of the '270 patent is present in a combination of prior art references. Dr. Purdue's report consists of a description of each alleged prior art reference followed by his determination that it would anticipate or render obvious the asserted claims of the '270 patent. A significant part of his report is drafted in the

negative, rather than the affirmative. While he does attempt to describe the elements from each reference that he relies on to form his opinion, he does not specifically discuss which elements combine to form the basis for his opinion. Therefore, one must examine each alleged prior art reference to see if Dr. Purdue has undertaken the required analysis to determine if each and every claim limitation is present in the prior art and, if so, whether he has sufficiently described a motivation to combine them.

The first reference considered by Dr. Purdue is the '726 application.[2] Based on his report and the chart submitted by Mergen's counsel, it appears that the '726 application may disclose each claim limitation except the required impermeable surface of support, a limitation present in all three claims at issue. (D.I. 212, Ex. A at ¶¶ 21–24; see D.I. 211, App. 1.) Dr. Purdue's subsequent analysis, then focuses on other alleged prior art references and their apparent disclosure of an impermeable surface of support, such that, in his opinion, when combined with the '726 application, would render the '270 patent obvious.

First, Dr. Purdue relies on what he considers to be common knowledge in the art regarding the use of glass supports for hybridization. Dr. Purdue's opinion, however, is devoid of factual support in the record. Dr. Purdue states in his report that "[w]hile the '726 application does not specifically mention that the solid sheet be impermeable, it was well known in the field to use glass supports for hybridization." (D.I. 212, Ex. A at ¶ 23.) Dr. Purdue's deposition testimony on this point is illustrative of his failure to satisfy the requirements of Rules 702 and 26(a)(2)(B):

Q: What is it that you're drawing upon to offer the statement that it was well-known in the field to use glass supports for hybridization?

A: Just my knowledge of the field. It wouldn't have been considered particularly anything unusual to do.

Q: Had anyone done it as of 1989?

A: Yes, there were examples in the literature of using glass slides.

Q: Can you point to any?

A: Not right now.

Q: And you didn't in your report either, did you?

A: No.

(D.I. 204, Ex. B, 127 at 12:10:27 2–12:10:58 16, Paul Edward Purdue, Ph.D. Dep., July 14, 2004.)

In his report, Dr. Purdue did not provide any basis for his conclusion that it would be obvious to one of ordinary skill in the art to use an impermeable support such as glass. Assuming that Mergen's counsel's element-by-element chart were accepted to supplement Dr. Purdue's validity analysis, Dr. Purdue's opinion of what a person of ordinary skill in the art would know or find obvious still lacks sufficient support to make it reliable under *Daubert* or admissible under Rule 26(a)(2)(B). OGT cannot be expected to cross-examine Dr. Purdue regarding the methodology he used to reach such a conclusion when he could not or would not disclose the factual evidence upon which he relied. It may well be, as Dr. Purdue asserts, that an impermeable surface of support was well known in the art, but to provide a fair opportunity for cross-examination, the rules require that the basis for his opinion be disclosed in his report. Because Dr. Purdue failed to do that, his opinion regarding obviousness based on the '726 ap-

---

2. There is no dispute that the '726 application is a prior art reference.

plication in combination with what he has alleged to be common knowledge in the art will not be presented to the jury.

Next, Dr. Purdue turns to the '373 patent to find the missing limitation of an impermeable surface of support. His report never explicitly states that the '373 patent discloses an impermeable surface of a support such that, when combined with the '726 application, the '270 patent would be obvious. What he does state, however, is that the '373 patent teaches:

> ... analysis of polynucleotide sequences by attachment of these polynucleotides to a solid support followed by hybridization analysis with labeled oligonucleotides or polynucleotide probes of known sequence. Amongst known potential solid supports for polynucleotides, the patent specifies a preference for non-porous, transparent supports (such as glass) over known porous supports (such as nitrocellulose filters). Using the known ability of suitably labeled probes to hybridize specifically with complementary nucleotide sequences under appropriate reaction conditions, the amount/presence of sequences complementary to the probe sequence within the sample fixed to the non-porous support can be discerned.

(D.I. 212, Ex. A at ¶ 25.) Although Dr. Purdue never explicitly states that he is relying on the '373 patent for its disclosure of an impermeable surface of support, he does reiterate the examiner's findings that the only differences between the '373 patent and the '270 patent is that the '373 patent "does not disclose a monomer by monomer synthesis of oligonucleotides on a

surface, nor the reverse dot-blot hybridization technique ...." (*Id.* at ¶ 26.) By clear implication, he is saying that the '373 patent discloses all of the other claim limitations including an impermeable surface of support. Based on this discussion, it can be argued that the combination of the '373 patent and the '726 application contains each and every limitation of claims 9 and 10 of the '270 patent.

The next reference discussed by Dr. Purdue is the '1302 application. At the same time as OGT's Motion to Exclude was filed, the parties each filed summary judgment motions as to patent validity. In its Motion for Partial Summary Judgment of Patent Validity (D.I. 178), OGT specifically argued that the '1302 application (referred to as the "Gingeras" reference by OGT), in combination with the '726 application or the "Doklady reference" (D.I. 178 at 17–18), or the '1302 application in combination with the '373 patent (*id.* at 20–21), could not render the '270 patent obvious. Mergen failed to respond in any manner to those arguments advanced by OGT in its Opposition (D.I. 217) to OGT's Motion or otherwise. I take Mergen's failure to respond to these arguments as a concession that there is no sound basis for either Dr. Purdue's opinion in this regard or for a finding that there is a material issue of fact with regard to whether the '270 patent is obvious in light of these references.[3] Consequently, Dr. Purdue will not be permitted to render an opinion as to whether the '1302 application, in combination or otherwise, renders the '270 patent obvious.

█ Dr. Purdue then focuses on two other alleged prior art references, the

---

3. It is unusual and far less than ideal to have to dig through multiple motions in search of the arguments and evidence pertinent to the present motions. However, that is the state of play in this case, and, having given Mergen the benefit of viewing material outside of Dr.

Purdue's report as supplementing the report, I will also require Mergen to bear the consequence on this motion of failing to respond to validity arguments that relate to Dr. Purdue's proposed testimony.

"Doklady reference" (referred to as the "Lysov reference" by OGT) and the "FEBS" reference (referred to as the "Khrapko reference" by OGT).[4] (D.I. 212, Ex. A at ¶¶ 28–32.) There is no question that this portion of Dr. Purdue's report and testimony must be excluded. Neither the Doklady nor the FEBS reference constitute prior art under 35 U.S.C. § 102. Section 102 provides, in relevant part:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or ....

The '270 patent is entitled to a priority date of May 3, 1988.[5] ('270 patent at 1.) The Doklady reference was published in November or December of 1988. Therefore, under either section 102(a) or 102(b), the Doklady reference does not qualify as prior art because it was neither published before the date of invention, as required by section 102(a), nor published more than one year prior to the date of application, as required by section 102(b). Similarly, the FEBS reference does not qualify as prior art under either section 102(a) or 102(b). The FEBS reference was published in October of 1989, more than one year after the '270 patent's priority date. Therefore, neither the Doklady reference nor the FEBS reference constitute prior art that may be relied upon for disclosing claim limitations during the obviousness inquiry.

Mergen concedes this point when it states in its Opposition to OGT's motion for partial summary judgment of patent validity that, "Mergen is relying upon these two papers as a secondary consideration of near simultaneous invention."[6] (D.I. 217 at 7.) At this point in the obviousness analysis, however, when discussing the differences between the claimed invention and the prior art, the focus is on references that qualify as prior art, not secondary considerations of obviousness. See Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) (describing the second step of the obviousness inquiry as ascertaining the "differences between the prior art and the claims at issue"). Because the Doklady and FEBS references clearly are not prior art under 35 U.S.C. § 102, Dr. Purdue will not be permitted to refer to them when discussing whether all of the claim limitations of the '270 patent were disclosed in the prior art.[7]

Finally, Dr. Purdue's discussion of motivation to combine will also be limited. He

4. Dr. Purdue refers to the Doklady reference in other places in his report (D.I. 212, Ex. A at ¶¶ 26–27), where he asserts that Doklady in combination with the '726 application, the '373 patent, and/or the '1302 application render the asserted claims of the '270 patent obvious.

5. This priority date is not in dispute.

6. Near simultaneous invention, also called "contemporaneous development," may be indicative of obviousness. Eli Lilly and Co. v. Teva Pharms. USA, Inc., No. IP 02–0512–C–B/S, 2004 WL 1724632, *39 (S.D.Ind. July 29, 2004) (citing Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co., 730 F.2d 1452, 1460 (Fed.Cir.1984)).

7. Further, it is clear that Dr. Purdue improperly relies on the Doklady reference in his initial determination that each and every claim limitation of the '270 patent is disclosed in the prior art.

reaches his conclusion that one of ordinary skill in the art would be motivated to combine the prior art references discussed above based solely on the assertion that the references "are all in the same field and represent different variations of similar experimental techniques involving oligonucleotide hybridization." (D.I. 212, Ex. A at ¶ 22.) Therefore, Dr. Purdue's testimony regarding motivation to combine the '726 application and the '373 patent will be limited to that assertion.

In summary, except as it relates to the '726 application in combination with the '373 patent, Dr. Purdue's opinion is unreliable under *Daubert* and therefore, would not be useful to the trier of fact under Rule 702. In addition, for those same reasons and with the same exception, his report fails to satisfy Rule 26(a)(2)(B). Further, his reliance on the Doklady and FEBS references is misplaced, as neither constitutes prior art. Therefore, OGT's Motion to Exclude Dr. Purdue's expert report on validity will be granted in part but denied to the extent that Dr. Purdue will be permitted to testify to his opinion regarding obviousness as it relates to the combination of the '726 application and the '373 patent.

### 2. Dr. William R. Latham III

OGT's Motion to Exclude is also directed toward Dr. Latham (D.I. 196), whom Mergen has retained as an expert on the issue of patent damages. (D.I. 211 at 2.) OGT's challenge to Dr. Latham is based on the assertion that he "improperly ignored factors critical to the assessment of a reasonable royalty" and that he makes "dubious assumptions and incredible conclusions that … [are] inherently unreliable." (D.I. 197 at 1–2.) Specially, OGT alleges that Dr. Latham, (1) improperly ignored OGT's most-favored licensee obligations (*id.* at 9–11), (2) improperly ignored OGT's numerous existing licenses to the '270 patent (*id.* at 11–12), and (3) improperly ignored actual negotiations between OGT and Mergen that occurred around the time of the hypothetical negotiation (*id.* at 12–15.)

A patentee is entitled to no less than a reasonable royalty on an infringer's sales for which the patentee has not established entitlement to lost profits. 35 U.S.C. § 284. A reasonable royalty is based "upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, No. Civ.A. 03–241 JJF, 2004 WL 2213562, at *2 (D.Del. Sept.28, 2004) (quoting *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed.Cir.1983)). The methodology used to assess damages under 35 U.S.C. § 284 rests within the discretion of the district court. *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 798 (Fed. Cir.1988) (citations omitted); *see Smith-Kline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed.Cir.1991). While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts regularly rely upon the fifteen factors set forth in *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970); *see St. Clair Intellectual Property Consultants*, 2004 WL 2213562, at *2 (internal citation omitted).

OGT does not attack the analytical method, basis, or reasons employed by Dr. Latham in formulating his opinion. Rather, OGT attacks the credibility of the Dr. Latham's report. OGT's basic attack is that Dr. Latham relies too heavily on two of the fifteen *Georgia–Pacific* factors: Mergen's weak financial position and OGT's interest in having many licensees. (D.I. 197 at 8.) In other words, OGT ar-

gues that Dr. Latham has given too much weight to those two factors. (*See id.*)

OGT's argument is, practically by its terms, applicable to the weight that should be given Dr. Latham's opinion, not its admissibility. This is a case where "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" for OGT to attack Dr. Latham's opinion. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Dr. Latham's report satisfies Federal Rule of Evidence 702's helpfulness standard and also contains "the basis and reasons" for his opinion under Federal Rule of Civil Procedure 26(a)(2)(B). Therefore, OGT's Motion to Exclude will be denied with regard to Dr. Latham's report on the issue of patent damages.

### B. Mergen's *Daubert* Motion to Exclude

OGT retained Ms. Copperthite as an expert on two issues: (1) the actions that a reasonable corporation undertakes upon learning of a patent relevant to its business and (2) whether or not the actions that Mergen took after becoming aware of OGT's '270 patent were consistent with the actions of a reasonable corporation. (D.I. 203 at 1; D.I. 189, Ex. A at ¶¶ 10–11.) Ms. Copperthite's testimony on these two issues is offered on the ultimate issue of willfulness.

Willfulness is a question of fact, *Underwater Devices Inc. v. Morrison–Knudsen Co. Inc.*, 717 F.2d 1380, 1389 (Fed.Cir.1983), which must be proved by clear and convincing evidence. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 628 (Fed.Cir.1985), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985). The determination of willfulness is made upon consideration of the totality of the circumstances and may include the consideration of several factors, including whether the infringer deliberately copied the ideas or design of another; whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; and the infringer's behavior as a party to the litigation. *See Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed.Cir.1986) *overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir.1992). "These contributions are evaluated and weighed by the trier of fact . . . ." *Knorr–Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed.Cir.2004). "Willfulness in infringement, as in life, is not an all-or-nothing trait, but one of degree. It recognizes that infringement may range from unknowing, or accidental, to deliberate, or reckless, disregard of a patentee's legal rights." *Id.* (citing *Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125–26 (Fed.Cir. 1987)).

Mergen argues that I should exclude Ms. Copperthite's testimony and expert report because, it says, Ms. Copperthite:

> (1) is not qualified as an expert in corporate intent or corporate reasonableness; (2) offers only subjective or speculative opinions; (3) improperly assumes the role of advocate for OGT's case by arguing as to the motives, intent, and state of mind underlying Mergen's accused conduct; (4) improperly assumes the role of the Court by explicitly or implicitly communicating legal standards; and (5) improperly invades the province of the jury by describing lay matter which a jury is capable of understanding and deciding without the help of an expert.

(D.I. 188 at 1.) OGT counters that Ms. Copperthite has experience that qualifies

her to render an expert opinion and that her opinion will be helpful to the jury. (D.I. 203 at 1.)

■ Having reviewed Ms. Copperthite's report, I find that she has "specialized knowledge" that will be helpful to the trier of fact to determine a fact in issue, namely, what the standard of behavior generally is when a corporation is confronted with an allegation of infringement. "The issue of 'willful' infringement measures the infringing behavior, in the circumstances in which the infringer acted, against an objective standard of reasonable commercial behavior in the same circumstances." *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1583 (Fed.Cir.1996). Therefore, her opinion on that point is directly relevant to the issue of reasonable corporate behavior and her testimony "will provide the jury with a frame of reference upon which to base its conclusions about Mergen's behavior." (D.I. 203 at 8.) [8]

Ms. Copperthite has 18 years of experience practicing law as an attorney and has served as in-house counsel for several multinational corporations, including Shell Oil, Honeywell International, Conoco, and Colgate–Palmolive. (D.I. 139 at ¶ 2.) At Conoco, she held the position of Chief Intellectual Property Counsel, and at Colgate–Palmolive the position of Chief Patent Counsel. (*Id.* at ¶ 3.) Mergen's argument that Ms. Copperthite's education and personal experience do not qualify her as an expert may be appropriate fuel for "vigorous cross-examination" and "presentation of contrary evidence," but those arguments are more appropriately directed to the weight of her testimony, rather than its admissibility. *See Daubert,* 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Her reasoning on the standard of reasonable commercial behavior, whether one agrees with it or not, is straightforward and relevant.

She will not, however, be permitted to testify as to the legal standard for willfulness. Nor will she be permitted to testify as to whether Mergen's behavior met the standard of reasonableness, *see McGowan,* 863 F.2d at 1273 (trial court erred in permitting expert to opine on breach of standard of care because such an opinion was "equally within the competence of the jurors to understand and decide"), or regarding Mergen's intent, motive, or state of mind, or evidence by which such state of mind may be inferred. [9]

## V. CONCLUSION

Accordingly, OGT's Motion to Exclude (D.I. 196) will be GRANTED, as it applies to Dr. Purdue's expert report on validity based on anticipation and obviousness, except as to the issue of obviousness based on the combination of the '726 application and the '373 patent, and DENIED as applied to Dr. Latham's expert report. Mer-

---

8. It is certainly not unprecedented to allow an expert to testify regarding the reasonableness of an alleged infringer's response to an accusation of patent infringement. For example, in *In re Hayes Microcomputer Products, Inc. Patent Litigation,* an expert was permitted to opine on whether an opinion letter provided the defendant "a reasonable basis for believing in good faith that the '302 patent was invalid." 982 F.2d 1527, 1543 (Fed.Cir. 1992). The expert's testimony was part of the evidence considered by the jury in its finding of willful infringement. *Id.* at 1543–44.

9. There are several instances in her report which could be interpreted as referring to or inferring Mergen's state of mind, including: referring to Mergen "recognizing" that its business activities might infringe the '270 patent (D.I. 139 at ¶ 30), that Mergen may "feel" that a license is necessary (*id.* at ¶ 34), that Mergen may have been "concerned" (*id.* at ¶ 36), and that Mergen had "concluded" whether it infringed or not (*id.* at ¶ 38). (*See* D.I. 230 at 6.)

gen's Motion to Exclude (D.I. 188) will be GRANTED IN PART and DENIED IN PART. An appropriate order will follow.

## ORDER

For the reasons set forth in the Opinion in this matter issued today, IT IS HEREBY ORDERED that OGT's Motion to Exclude (D.I. 196) is GRANTED in part, as it applies to Dr. Purdue's expert report on validity based on anticipation and obviousness, and DENIED in part, as to the issue of obviousness based on the combination of the '726 application and the '373 patent, and is further DENIED as to Dr. Latham's expert report. Mergen's Motion to Exclude (D.I. 188) is DENIED in part, to the extent that it seeks to prevent Ms. Copperthite from testifying about the standard of commercially reasonable behavior for a company confronted with an accusation of infringement, and in all other respects is GRANTED.