Joyce WATKINS, Dawn Bottjer, and Gwendolyn Resop, Plaintiffs,

v.

NEW CASTLE COUNTY, Town of Elsmere, and Town of Newport, Defendants.

Town of Newport, Cross–Claimant and Cross–Defendant,

v.

New Castle County and Town of Elsmere, Cross–Defendants and Cross–Claimants.

No. CIV.A. 03–791–KAJ.

United States District Court, D. Delaware.

June 16, 2005.

L. Vincent Ramunno, Esq., Wilmington, DE, for Plaintiffs.

Judith A. Hildick, Esq., Erika Sokoloff, Esq., Megan Sanfrancesco, Esq., New Castle County Law Dept., New Castle, DE, for Defendants New Castle County, Town of Elsmere, Jason Alexander Garrick, William Shipe, Joseph Ragan, Joseph Krajewski, Jonathan Stewart, Neal Strauss, Dave Kastner, Daniel Guzevich, M. Todd Wiant and Casey Couldin.

Ronald Stoner, Esq., Newark, DE, for Defendants Dave Kastner, M. Todd Wiant, Casey Bouldin, Daniel Guzevich, Jason Alexander Garrick, Jonathan Stewart, Joseph Krajewski, and Joseph Ragan.

Bruce C. Herron, Esq., Akin & Herron, P.A., Wilmington, DE, for Town of El-

smere, Dennis Sandusky and Mark Wohner.

## MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

Presently before me are three motions, including a Motion for Summary Judgment (Docket Item ["D.I."] 140) and *Daubert* Motion (D.I.139) filed by defendants New Castle County (the "County"), the Town of Elsmere (the "Town"), and police officers Jason Alexander Garrick, Jonathan Stewart, Neal Strauss, Dave Kastner, Daniel Guzevich, M. Todd Wiant, Joseph Ragan, Joseph Krajewski, William Shipe and Casey Bouldin (collectively, the "Officer Defendants")[1] and a Motion to Strike (D.I. 151) filed by Joyce Watkins, Dawn Bottjer, and Gwendolyn Resop (collectively, the "Plaintiffs"). For the reasons that follow, Defendants' Motion for Summary Judgment (D.I.140) and Motion to Exclude Testimony by Plaintiffs' Expert Witness (D.I. 139) will be granted in part and denied in part, and Plaintiffs' Motion to Strike (D.I. 151) will be denied.

## II. BACKGROUND

### A. Procedural Background

On July 18, 2003, Plaintiffs filed a complaint in the Superior Court of the State of Delaware in and for New Castle County, naming as defendants New Castle County and the Towns of Newport and Elsmere.[2]

(D.I. 140 at 2; D.I. 144 at 1.) On August 8, 2003, the case was removed to this Court. (*Id.*) On October 14, 2003, Plaintiffs filed an Amended Complaint. (D.I.19.) On July 22, 2004, Plaintiffs filed a Second Amended Complaint adding the Officer Defendants, as well as Dennis Sandusky and Mark Wohner.[3] (D.I.71.) The Second Amended Complaint asserts violations of the Fourth and Fourteenth Amendments to the U.S. Constitution under 42 U.S.C. §§ 1983, 1988, as well as a state law claim for wrongful death.[4] (D.I. 71 at ¶¶ 9.O., 10.H., 13.)

### B. Factual Background [5]

Barbara Russell and decedent Brian Resop had known each other for about 15 years, cohabiting during most of the last year of their relationship, prior to the events of August 14, 2002. (D.I. 145, Ex. B1, Dep. of Barbara Russell at 5:11–17, 6:4–17.) On or about August 11, 2002, the two separated because of Resop's drinking and drug use. (D.I. 144 at 1.) Upon separating, Resop said that he would not return until he had "straightened up." (D.I. 145, Ex. B1, Dep. of Barbara Russel at 92:19–22.)

Two days later, on the night of August 13, 2002, Resop appeared at Ms. Russell's residence and was allowed inside. (*Id.* at 15:5–10.) At 12:32 a.m. on August 14, Ms. Russell called the police, requesting help in removing Resop from her residence. (*Id.*, .Ex. B3, Dispatch Log at 1.) New

---

1. The County, the Town, and the Officer Defendants are collectively referred to as "Defendants."

2. Plaintiffs' claims against the Town of Newport have been dismissed with prejudice, by stipulation. (D.I.154.)

3. Although the identity of defendants Dennis Sandusky and Mark Wohner is not entirely clear, Plaintiffs' claims against them have likewise been dismissed with prejudice, by stipulation. (D.I.154.)

4. Although the Complaint cites Title 18 of the United States Code, the County and the Officer Defendants are clearly. correct in presuming "that Plaintiffs intended to sue under Sections 1983 and 1988 of Title 42 of the United States Code." (D.I. 140 at 3 n. 1.)

5. The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the non-moving party.

Castle County Patrolmen David Kastner and Joseph Ragan were the first two officers to arrive that evening. (*Id.*) Officer Kastner testified at his deposition that Resop had a "long, dazed stare in his eyes," was "incoherent," and complained about feeling ill. (*Id.*, Ex. B4, Dep. of David Kastner at 9:5–10, 17:6–8.) Officer Kastner asked Resop whether he needed to go to a hospital, but, according to Kastner, Resop did not respond. (*Id.*, Ex. B5, Supplemental Report by Officer Kastner at 2, August 14, 2002.) Ms. Russell, however, stated that Resop did indicate that he wanted to go to the hospital and gave her the contents of his pockets, which included a penny, a key, a wallet, and a piece of lint. (*Id.*, Ex. B1, Dep. of Barbara Russell at 25:6–29:7.) Ms. Russell further testified that Resop said "that he didn't feel right" and that "he may have been poisoned or something like that." (*Id.*, Ex. B1, Dep. of Barbara Russell at 25:17–19.) Ms. Russell informed Officer Ragan that Resop had an extreme drug habit, that his drug of choice was crack cocaine, and that he was acting in a way that Ms. Russell had never seen. (*Id.*, Ex. B6, Dep. of Joseph Ragan at 20, 21, 26.) Officer Ragan observed that Resop was not following simple commands, such as a request to sit down, and that Resop appeared to be intoxicated. (*Id.* at 37:12–38:12.) According to Officer Ragan, Resop was not violent, verbally abusive, or threatening to anyone. (*Id.* at 25:16–22.) Officer Ragan testified at his deposition that he was "going to leave it up to [Officer Kastner] as to what ... to do because he had more information...." (*Id.* at 42:3–4.)

The dispatch log reflects that Officers Wiant and Stewart were next to arrive at Ms. Russell's residence. (*Id.*, Ex. B3, Dispatch Log at 1.) Officer Wiant, then new to the police force, made the discretionary decision to place Resop under arrest, "[t]o demonstrate [his] willingness to become engaged in the type of environment that is required to be a police officer." (*Id.*, Ex. B8 at 43:24–44:15.) Resop was never advised by the arresting officers that he was being placed under arrest, but rather was merely asked to come with them. (*Id.*, Ex. B4 at 144:2–6, 144:19–23.) When Resop asked what he had done, none of the officers gave him an explanation. (*Id.* at 144:24–145:6.) Instead, Officer Ragan attempted to handcuff Resop but only managed to get a cuff on Resop's right wrist, because Resop tensed up and prevented his arm from being placed behind his back. (*Id.*, Ex. B11, Statement of Officer Ragan at 2, August 21, 2002.) Officers Wiant, Kastner, and Stewart then joined Officer Ragan in attempting to handcuff Resop. (*Id.*) In the struggle that ensued, the officers and Resop ended up on the floor in a small foyer behind the front door of the residence. (*Id.*)

At this point, Officer Kastner became trapped between Resop and one of the surrounding walls and seemed to be getting crushed. (*Id.*, Ex. B4, Dep. of David Kastner at 59:17–22.) Officer Stewart then attempted to get Resop to comply with repeated requests to stop resisting. Stewart began pressing his foot against Resop's testicles, striking Resop in the face with a closed fist, striking Resop in the wrist with his "ASP" baton, and striking Resop in the face again several times. (*Id.*, Ex. B13, Supplement Report of Officer Stewart at 3.) At some point, Officer Ragan asserts that Resop reached toward his holster, at which point Officer Ragan responded by hitting Resop twice in the forehead. (*Id.*, Ex. B11, Statement of Officer Ragan at 3.)

During this time, Chief Strauss and Sargent Shipe of the Elsmere agency had arrived and Chief Strauss applied pepper spray to Resop's eyes in an attempt to obtain his compliance.[6] (*Id.*, Ex. B15, De-

---

**6.** There is a factual dispute as to how much pepper spray Chief Strauss applied. Chief

position of Neal Strauss at 86:14–15.) Resop, on the floor, continued to resist the officers' efforts to restrain him. (*Id.*, Ex. B13, Supplemental Report of Officer Stewart at 3.) Officer Stewart then began to drop his weight, knee first, onto Resop's right side. (*Id.*) Chief Strauss described Resop's behavior as "resisting" rather than fighting. (*Id.* at 128:3–8, 128:22–24.) Eventually, Resop was removed from the foyer and held in a chest-down position, also known as a prone restraint, by Officer Guzevich and possibly others, while Resop's hands and ankles were cuffed. (D.I. 144 at 7; D.I. 145, Ex. B20, Dep. of Daniel Guzevich at 33:2–35:8.) After continued pressure on Resop's back for an indeterminate amount of time while he remained in the chest-down, prone restraint position, Resop's resistance level dropped significantly. (*Id.* at 39:1–22.)

At approximately 1:19 a.m., Officer Collini arrived at the scene. (*Id.*, Ex. B24, Dep. of Gina Collini at 74:15–16.) When she looked into the residence, she observed several officers standing near Resop who, at that point, was lying chest down and not moving. (*Id.* at 8:1–9:18.) Officer Collini inquired as to Resop's condition when she realized he wasn't moving, and one of the officers responded that he was fine, just unconscious. (*Id.* at 9:24–10:3.) At about the same time as Officer Collini's arrival, the dispatch log reflects that the ambulance, which had previously been called, could disregard the request. (*Id.* at 113:21–23 and Ex. B25, New Castle County Police 10–Code and Ex. B3 at 2, Dispatch Log.) Resop was brought outside of the house. (*Id.*, Ex. B24 at 13:17–20.) Officer Collini checked to see if he had a pulse and could not discern one. (*Id.* at 19:6–10.) Soon thereafter the paramedics arrived and took Resop to the hospital.

(*See id.* at 23, 28.) Resop was taken to Christiana Medical Center where he was pronounced dead. (D.I. 150 at 4.) The autopsy report indicates that the cause of Resop's death was "acute intoxication by the combined effects of cocaine and ethanol with excited (agitated) delirium..." complicated by, among other things, prone restraint, and pepper spray injury. (*Id.*, Ex. B26, Autopsy Protocol at 2.)

## III. STANDARD OF REVIEW

### A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.

---

Strauss described it as "one short burst" (*id.*, Ex. B15, Dep. of Neal Strauss at 86:15), whereas Officer Guzevich stated that "it wasn't a little bit" (*id.*, Ex. B20, Dep. of Daniel Guzevich at 47:12).

R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd.,* 475 U.S. at 587, 106 S.Ct. 1348 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Motions to Exclude Evidence

Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 749 (3d Cir.1994) (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an "abuse of discretion" standard) (internal citations omitted). "[W]hen the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment," the Court of Appeals will give those rulings "a 'hard look' to determine if a district court has abused its discretion in excluding evidence as unreliable." *Id.* at 750.

## IV. DISCUSSION

### A. Motion for Summary Judgment

In the Motion for Summary Judgment, Defendants make several arguments addressing the claims raised by Plaintiffs against the County, the Town, and the Officer Defendants. Each of those arguments is discussed in turn.

### 1. Failure to Train/Supervise Claims

Plaintiffs suit against the County and the Town is based on 42 U.S.C. ¶ 1983, which provides, in relevant part, that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. More specifically, Plaintiffs' complaint is that the County and the Town failed to train and supervise their police officers on the risk of death associated with excited delirium or positional asphyxia, which lack of training resulted in the application of excessive force against Resop, in violation of the Fourth and Fourteenth Amendments of the United States Constitution. (D.I. 71 at ¶¶ 10 A–H.)

A municipality can only be liable under section 1983 when an official policy or custom of the municipality itself causes a plaintiff's injury. *Monell v. Dept. of Social Servs. of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Thus, to bring suit against the County and the Town under section 1983, Plaintiffs "must identify the challenged policy, attribute it to the ... [County or the Town] itself, and show a causal link between the execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984) (internal citation omitted). "To establish a Section 1983 claim for failure to train and supervise employees, a plaintiff must (1) identify with particularity what the supervisory of-

ficials failed to do that demonstrates deliberate indifference and (2) demonstrate a close causal link between the alleged failure and the alleged injury." *Daniels v. Delaware,* 120 F.Supp.2d 411, 423 (D.Del. 2000) (citing *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989)). As noted by the Supreme Court in *City of Canton,*

> it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197.

Defendants assert that "[t]he record in this case simply does not support Plaintiffs' claims that the County or [the Town] acted with deliberate indifference with respect to either any obvious training need or any pattern of unconstitutional conduct which, if ignored by either, would yield municipal liability." (D.I. 140 at 17.) Specifically, Defendants argue that "there is no evidence of a County or [Town] policy or custom of failure to train or supervise which caused the alleged constitutional violation, nor have Plaintiffs adduced any factual evidence demonstrating that the County or [the Town] made a conscious or deliberate choice not to train or supervise their police officers." (*Id.*) Further, Defendants assert that "[e]ven if the Court were to assume that the record contains

evidence of inadequate training or supervision, there is no evidence that the County or [the Town] were deliberately indifferent to any such inadequacy, or that the alleged failure in training or supervision actually *caused* Resop's injuries." (*Id.* at 19 (citing *City of Canton,* 489 U.S. at 391, 109 S.Ct. 1197) (emphasis in original).)

Plaintiffs argue in response that "the evidence clearly establishes that . . . [the] County actually had within its possession since 2001, studies reflecting upon the serious health consequences of a prone restraint as well as studies addressing the medical diagnosis of cocaine induced excited delirium," but that the County failed to train in such matters its officers who had completed the Academy Training Curriculum prior to September 7, 2000.[7] (D.I. 144 at 35–36.) Plaintiffs assert that the County's failure to train its veteran officers in such matters resulted in the Officer Defendants' failure to check Officer Guzevich's use of the prone restraint technique in securing Resop, and that such a failure was a contributing factor in Resop's death. (*Id.* at 36–37.)

■ The evidence presented by Plaintiffs is sufficient to create a genuine issue of material fact as to whether the County may be liable for failure to train under section 1983. First, the autopsy report indicates that "prone restraint" and "excited delirium" were amongst the causes of Resop's death. (D.I. 145, Ex. B26, Autopsy Protocol at 2.) Second, Plaintiffs may be able to establish that the County acted with "deliberate indifference," under *City of Canton,* by the fact that it included discussions of positional asphyxia and cocaine-induced excited delirium in its train-

---

**7.** Although no precise date was provided as to when the Academy began training its officers in these matters, September 7, 2000 is listed as a date in the Mission Statement contained within the 27th Academy Lesson Plan, and presumably these matters were included in training materials thereafter. (D.I. 145, Ex. B44 at NCC006267, New Castle County Police Department Lesson Plan, 27th Academy.)

ing materials for new officers but allegedly did not require its veteran officers to undergo similar training. (*Id.*, Ex. B32 at NCC007041–43, New Castle County Police 28th Academy Chemical Aerosol Spray Training Lesson Plan.) In a case based on similar facts and evidence, the United States District Court for the Southern District of Ohio held that "a reasonable jury could find that the City had notice of the potential hazards of agitated delirium with restraint and that the City was deliberately indifferent in failing to adequately train the police and firefighters on how to deal with 'at risk' persons." *Johnson v. City of Cincinnati,* 39 F.Supp.2d 1013, 1020 (S.D.Ohio 1999) (internal citation omitted). Thus, Plaintiffs' have presented evidence to adequately establish that genuine issues of material fact preclude a grant of summary judgment for the County on Plaintiffs' "failure to train" claims. Therefore, the Defendants' Motion for Summary Judgment (D.I.140) will be denied as it applies to the County.

 The Plaintiffs have failed to present similar evidence of "deliberate indifference" with regard to the Town. They have not argued that the Town possessed information regarding the risks of excited delirium or prone restraint and then failed to train its officers in such matters. Therefore, the defendants' Motion for Summary Judgment (D.I.140) will be granted insofar as it pertains to the Town.

## 2. Excessive Force

Plaintiffs' main assertion against the Officer Defendants is that they used excessive force in arresting Resop, which violated the Fourth Amendment's "objective reasonableness" standard. (D.I. 144 at 10.) Defendants do not dispute that "[t]he 'reasonableness' standard of the Fourth Amendment is used to analyze excessive force claims" (D.I. 150 at 6), but they assert that summary judgment is appro-

priate because the actions of the officers were "reasonable." (*Id.* at 6–8.)

In *Graham v. Connor,* the Supreme Court stated that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In judging the reasonableness of the use of force, "careful attention [should be paid] to the facts and circumstances of each particular case," and should include attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal citation omitted). "The question is 'whether the *totality of the circumstances* justifies a particular sort of . . . seizure[.]'" *Id.* (quoting *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)) (emphasis added). In applying this test on summary judgment, the Third Circuit has stated that the

> sensitivity to context suggests that regardless of whether objective reasonableness invokes a different and heightened standard from negligence, reasonableness under the Fourth Amendment should frequently remain a question for the jury. To put the matter more directly, since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of "reasonableness" is itself reasonable and widely shared.

*Abraham v. Raso,* 183 F.3d 279, 290 (3d Cir.1999).

 Thus, in considering the totality of the facts and circumstances of this case, as

earlier described, *supra* Part II., there is a genuine issue of material fact as to whether the Officer Defendants' conduct was objectively reasonable, and summary judgment for Defendants is inappropriate.

### 3. Failure to Provide Medical Care

Plaintiffs also assert that the Officer Defendants failed "to use the standard of care of a competent police officer by failing to seek or request the assistance of medical personnel to determine the appropriate and necessary form of restraint of a person who [the] police either knew or should have known to be experiencing excited delirium and/or positional asphyxia so as not to cause further injury or death to ... Resop." (D.I. 71 at ¶ 9.E.) Plaintiffs also assert that the Officer Defendants "failed to provide proper care including medical care over ... Resop while in their custody thereby resulting in his death." (*Id.* at ¶ 9.J.) Thus, Plaintiffs argue that the Officer Defendants' actions and inaction, as alleged, amounted to "deliberate indifference" toward Resop. (*Id.* at ¶ 9.)

To the extent that Plaintiffs are asserting "that lack of concern for [Resop's] medical needs is a factor contributing to the excessiveness of the officers' use of force that evening..." (D.I. 144 at 17), Defendants only response is that "Plaintiffs' response ... regarding the allegations concerning failure to provide medical care are unclear". (D.I. 150 at 8.) It is not clear to me either how the failure to obtain medical care bears on the allegations of excessive force,[8] but since I have already found that there is a genuine issue of material fact as to whether the Officer Defendants' conduct was objectively rea-

sonable, I need not consider Plaintiffs' additional argument, regarding medical needs and excessive force, at this time.

■ Defendants argue that Plaintiffs' claim for failure to provide medical care, brought pursuant to the Due Process Clause of the Fourteenth Amendment, requires that "the need for medical treatment must be both apparent and serious, and [that] the denial of such treatment must be both deliberate and without legitimate non-punitive objective." (D.I. 140 at 21.) Defendants' main assertion is that because "there was no serious medical condition, the officer-defendants could not have been deliberately indifferent." (*Id.*) Plaintiffs, however, assert that the " 'deliberate indifference' standard is met by the evidence[,]" specifically, that "officers Wiant, Stewart, Kastner and Ragan had sufficient notice of much more serious impending complications for [Resop] in light of his dangerously high level of impairment, his incoherence, his known or suspected extreme addiction to crack cocaine and his complaints of physical illness." (D.I. 144 at 17.)

■ A medical need is "serious" if it is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987); *see also Ford v. Davis,* 878 F.Supp. 1124, 1129 (N.D.Ill.1995) (noting that "[t]o survive dismissal, [defendant] must show that his medical condition was so serious that an objectively reasonable

---

**8.** It seems that the argument asserted by Plaintiffs is that the Officer Defendants should have called a doctor before they started arresting Resop because, according to Plaintiffs' reasoning, that was necessary "to determine the appropriate and necessary form of restraint of a person ... known to be experienc-

ing excited delirium and/or positional asphyxia ...." (D.I. 71 at ¶ 9.E.) Plaintiffs provide no authority in support of their assertion that there is an obligation on the part of the police to call a doctor for advice on how to make an arrest. (*See* D.I. 144 at 11–15.)

officer would think his life was threatened or that. ... [he had a medical problem which] posed a risk of needless pain or lingering disability if not treated at once.")

Defendants' argument is premised on the factual statement that "[w]hile Resop may have exhibited a lack of focus or concentration and failed to comply with the officers' commands, at no time while Resop was in the officer-defendants' presence did he request medical treatment, complain about pain or report any symptoms of a medical problem." (*Id.*) These facts, however, are not undisputed. Officer Kastner testified at his deposition that Resop had a "long, dazed stare in his eyes," was "incoherent," and complained about feeling ill. (*Id.*, Ex. B4, Dep. of David Kastner at 9:5–10, 17:6–8.) Officer Kastner was arguably concerned about Resop's medical needs because he asked whether Resop needed to go to a hospital. (*Id.*, Ex. B5, Supplemental Report by Officer Kastner at 2, August 14, 2002.) Officer Kastner asserts that he received no response from Resop (*id.*), but Ms. Russell testified, at her deposition, that Resop did indicate that he wanted to go to the hospital and gave her the contents of his pockets, in apparent anticipation of going to the hospital. (*See id.*, Ex. B1, Dep. of Barbara Russell at 25:6–29:7.) Ms. Russell also claims that she informed Officer Ragan that Resop had an extreme drug habit, that his drug of choice was crack cocaine, and that he was acting in a way that Ms. Russell had never seen. (*Id.*, Ex. B6, Dep. of Joseph Ragan at 20, 21, 26.) Ms. Russell further testified that Resop said "that he didn't feel right" and that "he may have been poisoned or something like that." (*Id.*, Ex. B1, Dep. of Barbara Russell at 25:17–19.)

Based on the evidence presented regarding the factual circumstances of Resop's condition, there is a question of fact as to whether his condition was "serious," such that "a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987). Therefore, Defendants' Motion for Summary Judgment (D.I.140) will be denied with respect to Plaintiffs' claims for failure to provide medical care.

### 4. Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court, in *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), set forth a two-step process to evaluate claims of qualified immunity. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.2002); *Brooks v. Price*, No. Civ.A. 02–230–KAJ, 2003 WL 22768704, at *1. (D.Del. Nov. 17, 2003.) The first step is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If it is determined that a constitutional right was violated, the second inquiry is "to ask whether the right was clearly established." *Id.* This inquiry requires that "the contours of the right ... be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S.Ct. 2151 (internal citation omitted). "That is, in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited?" *Bennett v. Murphy*, 274 F.3d at 136. If "the officer's mistake as to what the law requires is reasonable," then the doctrine of qualified

immunity protects the officer from liability. *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151.

Defendants assert that even if Plaintiffs' allegations are sufficient to set forth "the possibility of a constitutional violation based simply on the general rule prohibiting the use of excessive force, the Plaintiffs have failed to produce any evidence of record to support their claims." (D.I. 140 at 26.) Essentially, Defendants argue that "[t]he facts of this case are such that no reasonable fact finder could conclude that there was no reasonable basis for the officers' actions in arresting Resop." (*Id.*)

■ Plaintiffs assert that Defendants "acknowledge ... that a prone restraint may be found to be excessive in certain circumstances. [But that t]he question of when and under what circumstances such a restraint violates the right ... addresses ... whether a violation in a given case has occurred, not whether the right exists in the first place." (D.I. 144 at 33.) Thus, Plaintiffs argue that "questions of fact clearly exist ... as to whether the act of a prone restraint in this case constitutes a violation of that right." (*Id.*) Further, Plaintiffs assert that "no objectively reasonable officer should have thought his actions would be reasonable in forcing [Resop's] chest continuously to the ground after he had been beaten, pepper sprayed, handcuffed to the rear and while numerous other officers had control of his legs. [And that, a]t the very least[,] questions of fact as to whether a reasonably objective officer would have thought so, are best left for the jury to determine." (*Id.* at 34.)

I agree with Plaintiffs that material questions of fact exist both as to whether the Officer Defendants violated Resop's right to be free of excessive force and as to whether the Officer Defendants' could have reasonably believed their conduct was not prohibited. Thus a grant of qualified immunity at this stage of the litigation would be premature. Defendants' Motion for Summary Judgment (D.I.140) as to qualified immunity must await development of the facts at trial and will therefore be denied without prejudice.

### 5. Punitive Damages

■ Defendants argue that the County, the Town, and the Officer Defendants in their official capacities cannot be subject to liability for punitive damages based on a claim brought pursuant to section 1983. (D.I. 140 at 28 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Marchese v. Umstead*, 110 F.Supp.2d 361, 373 (E.D.Pa.2000); *Leipziger v. Township of Falls*, No. CIV.A. 00–1147, 2001 WL 111611, at *9 (E.D.Pa. Feb. 1, 2001)).) Plaintiffs do not dispute Defendants' argument in this regard; rather they argue that the Officer Defendants may still be held liable for punitive damages in their individual capacities, if found to have engaged in willful or wanton misconduct. (D.I. 144 at 39) (citing *Jardel Co., Inc. v. Hughes*, 523 A.2d 518 (Del.1987).) Defendants do not contest that. (*See* D.I. 150 at 11.) Therefore, Defendants' Motion for Summary Judgment (D.I.140) will be granted with respect to the claims for punitive damages against the County, the Town, and the Officer Defendants in their official capacities, but denied with respect to the Officer Defendants in their individual capacities.

### 6. State Law Claims

■ Defendants assert that the County, the Town, and the Officer Defendants in their official capacities are entitled to summary judgment based upon the immunity provided by the County and Municipal Tort Claims Act (the "Act"), 10 *Del.Code* §§ 4010–4013. (D.I. 140 at 28.) Plaintiffs do not dispute Defendants' assertion of immunity under the Act, but instead argue that the Officer Defendants may be held

liable under state law in their individual capacities for "conduct ... [which] reflect[s] a 'conscious indifference' or [an] 'I don't care' attitude." (D.I. 144 at 38) (citing *Foster v. Shropshire*, 375 A.2d 458 (Del.1977).)

The Act protects "all governmental entities and their employees from suit on any and all tort claims seeking recovery of damages." 10 *Del.Code* § 4010. The broad grant of immunity is subject to only three exceptions described in section 4012, none of which are asserted to apply to the facts of this case.[9] Therefore, Defendants' Motion for Summary Judgment (D.I.140) will be granted with respect to the state law claims against the County, the Town, and the Officer Defendants in their official capacities.[10]

### B. Motion to Exclude Testimony

Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Rule 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise ...." The party offering the expert testimony has the burden of proving admissibility. *See Daubert*, 509 U.S. at 592 n. 10, 113 S.Ct. 2786 (citation omitted). The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation. *Id.* at 589–90, 113 S.Ct. 2786. Further, Rule 702 requires that expert testimony assist the trier of fact. In other words, it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591–92, 113 S.Ct. 2786.

In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts at issue. *Id.* at 592–93, 113 S.Ct. 2786. As part of that inquiry, the court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir.1999).

Expert testimony can only be received from someone who has specialized knowl-

---

9. 10 *Del.Code* § 4012 is as follows:
 § 4012. Exceptions to Immunity.
 A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:
 (1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.
 (2) In the construction, operation or maintenance of any public building or the appurtenances thereto, except as to historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.

(3) In the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

10. Because Defendants did not argue in their Opening Brief that the Officer Defendants in their individual capacities were immune from suit under state law (*see* D.I. 140 at 28–29), but only raised this issue in their Reply Brief (*see* D.I. 150 at 12), their argument on that point is not appropriately before me and I make no ruling with respect to it.

edge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field. *See Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir.1997) (metallurgist not qualified to testify about industry standards for safes); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 382 (5th Cir.1996) (expert not qualified to testify about correlation of chemical effects on rats and on humans). Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the factfinder. *See McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir.1988) (expert permitted to testify as to the customary duty of factory representatives in the air compressor industry, but should not have been permitted to opine on breach of such duty because the jury was equally qualified to make that determination); *S.E.C. v. Lipson*, 46 F.Supp.2d 758, 763 (N.D.Ill.1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

In their Motion to Exclude Testimony by Plaintiffs' Expert Witness (D.I.139), Defendants assert that Mr. Danaher, Plaintiffs' expert, is not qualified to offer expert testimony and that, even if he were qualified, his testimony is not reliable or relevant and should therefore be excluded. (D.I. 139 at ¶¶ 4–8.) First, Defendants assert that Mr. Danaher is not qualified to render expert testimony on "police training, methods, and policies" (D.I. 139 at ¶¶ 4–5) because he cannot remember specific details from his curriculum vitae, including *inter alia*, which police agencies have hired him as a consultant, and where or on what specific subjects he taught seminars (*id.* at ¶ 5). Second, Defendants

argue that he is not qualified to offer expert testimony on "excited delirium" or "positional asphyxia" because he has never taught a course on these subjects, nor attended a course devoted entirely to these subjects. (*Id.* at ¶ 6.) Lastly, Defendants assert that even if Mr. Danaher is qualified to testify as an expert on these subjects, he "is not familiar with the criminal statutes in Delaware[,]" and "may not testify to a legal conclusion[,]" which he has done "throughout his opinion." (*Id.* at ¶ 8.)

Plaintiffs assert that Mr. Danaher has 22 years of experience as a police officer for the Lafayette Police Department in Lafayette, Indiana, and that his "personal knowledge and experience" are sufficient to qualify him as a reliable expert. (D.I. 146 at 1–2.) Specifically, Plaintiffs argue that "[i]n connection with ... [his] work experience training & education, he has developed an awareness of the clinical signs of cocaine induced excited delirium and is aware that beyond straight forward overdose concerns, ... the diagnosis of excited delirium is common with cocaine abusers and can result in serious health consequences unless responded to appropriately." (*Id.* at 4.) Thus, Plaintiffs assert that Defendants' arguments go to the weight of Mr. Danaher's opinions, not their admissibility. (*Id.* at 6.)

 I agree with Plaintiffs that Mr. Danaher's experience and training as a police officer of 22 years qualifies him to render an expert opinion on police training, methods, and policies as well as the clinical signs and dangers of excited delirium and positional asphyxia. Defendants' arguments on these points go to the weight of his testimony, not its admissibility. However, Mr. Danaher's opinions in which he draws legal conclusions[11] beyond

---

11. Mr. Danaher states in his report, for example, that "[t]he conduct of the Defendant Police Officers in this case was not merely 'inad-

equate' and 'unreasonable' but 'recklessly, willfully, indifferent'. [sic] The Police Officers not only violated the plaintiffs' [sic] constitu-

the appropriate standard of reasonable conduct are unhelpful to the jury and he will therefore be precluded from testifying to those. (*See, e.g., Highway Materials, Inc. v. Whitemarsh Township, Montgomery County, Pennsylvania*, No. CIV.A. 02–3212, 2004 WL 2220974, at *20 (E.D.Pa. Oct. 4, 2004)) (excluding expert's opinion that the defendants' actions satisfied the "shocked the conscience" standard because such opinion amounted "to a legal conclusion clearly within the purview of . . . [the] Court's decision making power rather than a party's expert."); *Salas by Salas v. Wang*, 846 F.2d 897, 905 n. 5 (3d Cir.1988) (noting that the Fifth Circuit has held that Federal Rule of Evidence 704 "does not permit expert testimony as to legal conclusions."). Thus, Defendants' Motion to Exclude Testimony by Plaintiffs' Expert Witness (D.I.139) will be granted to the extent that Mr. Danaher will be precluded from testifying as to any legal conclusions beyond the appropriate standard of reasonable conduct, and in all other respects will be denied.

## C. Motion to Strike

Plaintiffs have filed a Motion to Strike (D.I.151) in which they make three principal arguments. First, Plaintiffs assert that, if Defendants wanted to rely upon the Attorney General's Report of August 14, 2002 (the "Report"), Defendants should have included it in their opening brief in support of their motion for summary judgment, rather than in their reply. (D.I. 151 at ¶ 1.) Thus, Plaintiffs assert that Defendants' inclusion of the Report in their reply brief violates Delaware Local Rule 7.1.3(c)(2). (*Id.*) Second, Plaintiffs take issue with Defendants' attempt to distinguish the case law cited by Plaintiffs in support of their brief in opposition to Defendants' motion for summary judgment. (*Id.* at ¶ 2.) Finally, Plaintiffs assert that their argument regarding qualified immunity was limited to Defendant Guzevich "and any other officer who participated in the activity of continuously forcing [Resop's] chest to the ground . . ." because "Defendants in their Opening Brief simply did not seek to establish Summary Judgment as to Qualified Immunity for any act other than the simple act of handcuffing [Resop's] hands and/or flexcuffing his feet." (*Id.* at ¶ 3.)

Defendants contend that "Plaintiffs' Motion to Strike does not allege any of the specifically enumerated permissible reasons for filing a motion to strike [under Federal Rule of Civil Procedure 12(f) ] [12] and should be denied . . . [because it] is merely a thinly veiled Motion *in Limine* and Surreply." (D.I. 153 at 1.) Defendants argue that the inclusion of the Report in their reply brief does not violate Local Rule 7.1.3(c)(2) because "[t]he [R]eport was included in the reply brief in response to assertions made in Plaintiffs' Brief in Opposition . . . regarding the conduct of the officers and its legality . . . [and] is permitted under the rules and the case law of this District." (*Id.* at 2–3.) Next, Defendants assert that Plaintiffs' second and third arguments are "an impermissible surreply" because "Plaintiffs improperly address the merits of the Motion for Summary Judgment and Defendants' briefing

---

tional rights, but also failed to follow the guidelines the courts have given us." (D.I. 139, Ex. 1, Preliminary Expert [Report] of Larry Danaher at 5.)

**12.** Federal Rule of Civil Procedure 12(f) provides that, "[u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

in support thereof." (*Id.* at 3.) Thus, Defendants make no attempt to respond to Plaintiffs' second and third arguments.

▮▮▮▮ As to Defendants' inclusion of the Report in their reply brief, it does contradict the mandate in Local Rule 7.1.3(c)(2) that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." Therefore, I have not considered the Report in rendering decision on the present motions. I note, however, that if Plaintiffs wish to attempt to exclude the Report from evidence at trial, they should make such a request at the appropriate time in the form of a motion *in limine* and nothing I have said in this opinion should be taken as a prejudgment of such a motion. I also agree with Defendants that Plaintiffs' second and third arguments are inappropriate surreplies and I have thus not considered them either. Having said that, however, I need not and will not disturb the record by striking material from it. Rule 12(f) applies only to pleadings, not motions and related documents. *E.g., Pilgrim v. Trustees of Tufts College,* 118 F.3d 864, 868 (1st Cir.1997); *United States v. S. Cal. Edison Co.,* 300 F.Supp.2d 964, 973 (E.D.Cal.2004); *Cobb v. Monarch Fin. Corp.,* 913 F.Supp. 1164, 1181 (N.D.Ill.1995). The Motion to Strike (D.I.151) will therefore be denied.

## V. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (D.I.140) will be granted to the extent that it pertains to Plaintiffs' claim against the Town for failure to train or supervise, Plaintiffs' claims for punitive damages against the County, the Town, and the Officer Defendants in their official capacities, and Plaintiffs' state law claims against the County, the Town, and the Officer Defendants in their official capacities; in all other respects, the Motion for Summary Judgment will be de-

nied. Defendants' Motion to Exclude Testimony by Plaintiffs' Expert Witness (D.I. 139) will be granted to the extent that Mr. Danaher will be precluded from testifying as to any legal conclusions beyond the appropriate standard of reasonable conduct, and in all other respects will be denied. Plaintiffs' Motion to Strike (D.I. 151) will be denied.

## ORDER

For the reasons set forth in the Memorandum Opinion issued in this matter today, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (D.I.140) is GRANTED to the extent that it pertains to Plaintiffs' claim against the Town of Elsmere (the "Town") for failure to train or supervise, Plaintiffs' claims for punitive damages against New Castle County (the "County"), the Town, and defendants Garrick, Stewart, Strauss, Kastner, Guzevich, Wiant, Ragan, Krajewski, Shipe and Bouldin (the "Officer Defendants") in their official capacities, and Plaintiffs' state law claims against the County, the Town, and the Officer Defendants in their official capacities; in all other respects, the Motion for Summary Judgment is DENIED. Defendants' Motion to Exclude Testimony by Plaintiffs' Expert Witness (D.I.139) is GRANTED to the extent that Plaintiffs' expert, Mr. Danaher, will be precluded from testifying as to any legal conclusions beyond the appropriate standard of reasonable conduct, and in all other respects is DENIED. Plaintiffs' Motion to Strike (D.I.151) is DENIED.